**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIMINAL NO. PWG-19-228** |
| | * | |
| **SEUN BANJO OJEDOKUN,** | * | |
| | * | |
| **Defendant** | * | |
| | * | |

*******

**OPPOSITION TO MOTION FOR RELEASE**

On April 27, 2020, the defendant filed a motion to reopen the detention hearing and release him from custody. The only novel claim in this motion is that COVID-19 is a changed circumstance meriting the defendant's release. This Court recently has denied over 80 similar claims by detainees (such as this defendant) housed in facilities run by the D.C. Department of Corrections ("DOC") and Chesapeake Detention Facility in Baltimore, Maryland. Most recently, this Court has denied the defendant's motions for release in *United States v. Lee,* ELH-19-159 (D. Md. April 24, 2020), ECF No. 97 (Order by Judge Hollander); *United States v. Williams*, GLR-19-318 (D. Md. April 24, 2020), ECF No. 345 (Order by Magistrate Judge Boardman); *United States v. Remarque*, PX-19-39 (D. Md. April 27, 2020), ECF No. 100 (Order by Judge Xinis); *United States v. Woodson*, GLR-17-658 (D. Md. April 27, 2020), ECF No. 94 (Order by Magistrate Judge Sullivan); *United States v. Dorchy*, GLR-18-172 (D. Md. April 28, 2020), ECF No. 218 (Order by Judge Hazel); and *United States v. Doye*, TDC-19-88 (D. Md. April 28, 2020), ECF No. 105 (Order by Judge Chuang). Because the defendant's generic argument about COVID-19 runs counter to the individualized determination required by the Bail Reform Act, and because the defendant has failed to make a sufficient factual showing to merit the relief sought (*i.e.*, release from custody), this Court should deny the motion, without a hearing.

**Background**

On April 25, 2019, the defendant was arrested in Illinois pursuant to a federal criminal complaint. He was detained upon his initial appearance and transported by the U.S. Marshals to Maryland. On May 6, 2019, a federal grand jury for the District of Maryland returned an indictment charging the defendant with conspiracy to commit money laundering. At a detention hearing on May 22, 2019, the Government set forth substantial evidence of the defendant's risk of flight. At the conclusion of the hearing, Magistrate Judge Sullivan detained the defendant, finding that no release condition would reasonably assure the defendant's appearance as required. Specifically, Magistrate Judge Sullivan found that the defendant "has no significant ties to this District and/or the USA to establish conditions of release to reasonably assure [the defendant]'s appearance." ECF No. 13.

On December 24, 2019, after retaining new counsel, the defendant filed a release motion. Case No. 19-1345, ECF No. 6. On December 30, 2019, without briefing from the Government or a hearing, Magistrate Judge Sullivan denied the motion, finding that the motion "does not present any new or additional facts that have a material bearing on the issue of detention." ECF No. 41.

On April 25, 2019, the defendant filed a second release motion. ECF No. 44. Fifteen of the seventeen numbered paragraphs in his latest motion are identical to paragraphs in the first release motion that Magistrate Judge Sullivan summarily denied. The defendant's only argument in favor of release pertains to COVID-19. As detailed below, the motion should be denied, without a hearing.

**Argument**

The defendant relies on the COVID-19 outbreak at the D.C. Jail, the pretrial facility where he currently is housed.[1] While the Government understands that a number of DOC inmates have been diagnosed with COVID-19,[2] and that others have test results pending, well over half of the DOC defendants previously diagnosed with COVID-19 have now recovered and returned to general population. Moreover, as described further below, D.C. Jail continues to take precautionary measures to prevent further transmission of COVID-19 and treat those detainees who have tested positive, and DOC is now under the oversight of the United States District Court for the District of Columbia pursuant to litigation in that court.[3] The defendant's motion should be denied, without a hearing.[4]

[1] The defendant's only claim regarding the D.C. Jail is that "[r]ecently, an inmate who worked in the kitchen at the DC Detention Center, where the defendant is incarcerated, contracted coronavirus." ECF No. 44 ¶ 2.

[2] On April 13, 2020, a COVID-positive CTF detainee died. According to a press report, the detainee was diagnosed with the virus on April 7, 2020, and placed in isolation before being transferred to a hospital. According to a public court filing, the detainee was 51 years old, "has diabetes and has multiple health issues related to that diagnosis." The detainee had been charged with first-degree murder in D.C. Superior Court.

[3] On April 19, 2020, United States District Court Judge Kollar-Kotelly issued an opinion and order in *Banks v. Booth*, 20-cv-849 (D.D.C.) granting in part and denying in part a motion for temporary restraining order (TRO) in a lawsuit brought against D.C. Jail and the Central Treatment Facility ("CTF"), and ordering D.C. Jail and CTF to take particular remedial steps discussed further below. *See Banks*, 20-cv-849, ECF 48 and 49. Most importantly, for the purposes of the defendant's motion, Judge Kollar-Kotelly did not order the release of prisoners as a remedy under the TRO. See ECF 49, at 26 ("The Court is not ordering the release of any inmates currently detained in DOC facilities.")

[4] The district court need not conduct a new pretrial detention hearing; rather, the court may base its decision on the original detention hearing and any additional evidence proffered by counsel. *See United States v. Williams*, 753 F.2d 329, 331 & n.7 (4th Cir. 1985).

## I. Legal Standard

The defendant's motion, which focuses exclusively on the COVID-19 outbreak, largely ignores the factors a court must consider in determining whether a defendant poses a flight risk and upon which Magistrate Judge Sullivan relied in ordering detention. These factors include: "(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a . . . a controlled substance [or] firearm; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . . ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).

A defendant may appeal a Magistrate Judge's detention order to the District Court. 18 U.S.C. § 3145(b). In considering such an appeal, the District Court reviews the Magistrate Judge's detention order de novo. *United States v. Stewart*, 19 Fed. App'x 46, 47 (4th Cir. 2001). Thus, the District Court must make "an independent determination of the proper pretrial detention or conditions of release." *Id.*

## II. The Defendant's Motion Ignores Nearly All of the § 3142 Factors, Which Weigh Heavily in Favor of Detention.

In this case, an examination of the § 3142 factors demonstrates that the detention order should remain in place.

### A. The Nature and Circumstances of the Offense

While living in Nigeria, the defendant participated in a money laundering conspiracy that fleeced elderly victims as part of a romance fraud scheme. This Court is familiar with the broader conspiracy, having presided over the four-week trial of one of the defendant's co-conspirators, Gbenga Benson Ogundele. As alleged by the grand jury, the defendant's role in the conspiracy involved, among other things, sending emails evidencing the deposits of money from victims of

fraud schemes, in order to facilitate money laundering and account for proof of ownership of fraudulent funds among members of the conspiracy. ECF No. 6 ¶ 11.

**B. Weight of the Evidence**

The 40-page affidavit in support of the criminal complaint fleshes out the strength of the Government's case. ECF No. 1-1. The defendant makes no attempt to dispute any specific fact in Agent Custer's affidavit, instead describing the many incriminating paragraphs therein as a "paucity of evidence." ECF No. 44 ¶ 5. Contrary to the defendant's representation, Agent Custer's complaint is replete with uncontradicted, and uncontradictable, electronic evidence tying the defendant to the scheme, including direct communication between the defendant and Mukhtar Haruna Danjuma, who was a charged co-defendant of Ogundele, as well as the apparent destruction of evidence from an email account. ECF No. 1-1 ¶¶ 13-15. Agent Custer's affidavit also introduced substantial other evidence establishing consciousness of guilt, including the defendant's participation in other illegal activity. That other act evidence is the subject of a pending motion before the Court. *See* ECF No. 19.

**C. History and Characteristics of the Person**

The defendant is correct that he has no criminal history. However, the defendant omits that he has zero ties to the United States or Maryland. Because of the lack of ties, the defendant presents a high flight risk.

**D. The Nature and Seriousness of the Danger to the Community in the Event of the Defendant's Release**

The defendant does not pose a danger to the community if released. However, his risk of flight is very high. He has proffered no package of release conditions and no third-party custodian. It would be logical and even understandable for the defendant, upon release, to try to flee the

country rather than face a jury trial and lengthy period of imprisonment. He has nothing to gain by staying.

### III. D.C. Department of Corrections Has Established Procedures with Respect to the COVID-19 Outbreak that Are Now Being Overseen by the United States District Court for the District of Columbia.

The defendant's motion briefly notes the health risks posed by COVID-19 and ignores the other § 3142 factors the Court must consider in determining whether a defendant poses a danger to the community and a flight risk. To be sure, the Bail Reform Act instructs courts to consider the "physical and mental condition" of the defendant as one of the factors in its analysis. 18 U.S.C. § 3142(g)(3)(A). Notwithstanding the COVID-19 outbreak, that factor does not weigh heavily, if at all, in favor of the defendant's release. The defendant does not allege that he has COVID-19. In this way, he is not seeking release based on his *actual* "physical and mental condition." Instead he relies solely on the possibility of becoming infected. As discussed below, however, DOC, which oversees the D.C. Jail and CTF, has implemented precautionary measures to mitigate this risk, continues to evolve its policies and procedures to address the unprecedented COVID-19 pandemic, and is being closely supervised in its ongoing efforts as part of the *Banks* litigation in the United States District Court for the District of Columbia.

#### A. DOC Has Instituted Precautionary Measures to Avoid Further Transmission of COVID-19 and Ensure Adequate Medical Care for Those Infected.

DOC has implemented a number of precautionary measures based on guidance from the D.C. Department of Health and the Centers for Disease Control ("CDC") to mitigate the risks associated with COVID-19, including restrictions on visitation to the facility, screening and quarantine of inmates, increased provision of masks and other personal protective equipment ("PPE") to staff and inmates, continued education of staff and inmates about the spread of COVID-

19 and ways to combat it, cancellation of group activities, and restrictions on out-of-cell time. As additional measures are implemented, DOC continues to alert the public. *See* https://doc.dc.gov/page/coronavirus-prevention (last accessed April 29, 2020).[5]

The Government acknowledges that Judge Kollar-Kotelly found that many of DOC's measures prescribed by policy have not been properly implemented (at least as of the time independent inspectors visited the facility on three occasions between April 10 and April 12), further measures are needed, and further education of staff and inmates regarding the measures that exist is necessary. *See generally*, *Banks*, Mem. Op., ECF 49. Notably, however, Judge Kollar-Kotelly declined to grant the requested injunctive relief of releasing prisoners. *See id.* at 26.

As Judge Kollar-Kotelly recognized, "COVID-19 poses an unprecedented challenge and the precautionary measures taken by [DOC] are rapidly evolving." *Banks*, Mem. Op., ECF 49, at 16; *see also id.* at 15 (recognizing that DOC's "response to this sudden and unprecedented pandemic is ongoing"). With the recognition that DOC's response continues to evolve, Judge Kollar-Kotelly issued an extensive order to remediate the deficiencies in DOC's implementation of its policies, including:

- ensuring proper triage process for sick call requests;
- ensuring medical staff are promptly informed of inmates who present with symptoms of COVID-19;
- providing better documentation of sick calls and the outcomes of same;
- ensuring proper monitoring of cell restrictions;

[5] The DOC webpage is updated regularly with announcements, policy descriptions, and answers to frequently asked questions.

- ensuring appropriate housing for inmates in quarantine;
- consulting with public health professionals regarding strategies that can be implemented to strengthen COVID-19 related education;
- conducting additional staff training on use of thermometers;
- providing consistent and reliable access to legal calls;
- ensuring proper social distancing;
- ensuring proper use and communication to staff regarding use of PPE;
- strengthening the environmental health and safety program;
- assessing whether any additional security staff are needed to provide appropriate supervision for social distancing; and
- ensuring that all inmates, including those on isolation, have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters.[6]

On April 17, 2020, DOC Director Quincy L. Booth also issued a memorandum to all employees and contractors entitled "Reminders and Updated COVID-19 Policies and Procedures." *See Banks*, Report Submitted by *Amicus Curiae* Pursuant to April 9, 2020 Consent Order, ECF No. 47, Ex. 11. Director Booth's memorandum, which directly addresses many of the concerns raised by the independent inspectors as part of the *Banks* litigation, both reminds staff of existing procedures and provides several updated procedures, including the following:

- **Social Distancing:** Correctional officers must enforce social distancing at all times. There shall be multiple daily announcements over the public address system reminding staff and resident of the need for social distancing. Strict limits also are placed on the number of people who can be out of their cells at one time (generally no more than six). Group activities shall continue to be suspended during the emergency period.

[6] *See Banks*, Order, ECF 48; *see also* Mem. Op., ECF No. 49, at 27-31.

- **Residential Out of Cell Time:**  Inmates are restricted to one hour out of their cells each day, and there will be PA announcements reminding inmates of this rule.

- **Personal Protective Equipment:**  DOC shall conduct refresher courses on the proper use of PPE for staff during roll call on each shift and such courses shall be documented.  DOC's medical staff and sick call staff shall visit DOC housing units to refresh staff and residents on PPE use, COVID prevention, and how to submit sick call slips for medical units, and such refreshers shall be documented.

- **Isolation Units:**  All residents in isolation shall be allowed to shower once per day, shall be allowed 30-minute legal calls per day on an unmonitored "rolling phone" that will be transported to the inmate's cell, and shall be provided tablets with entertainment and education content, as well as activity packets.

- **Unit Common Area and Cell Cleaning:**  At the beginning of each shift, correctional officers shall document the amount of cleaning supplies available and report any shortages, provide cleaning products on towels or paper towels for inmates to clean cells, verify and document that common areas are cleaned, and post listings of cleaning products available to residents in each housing unit.

- **Linen and Laundry Exchanges:**  Each week, DOC shall provide residents with fresh clothing, undergarments, and linens, and collect used items.

- **Contractor and Staff Screening and Hygiene:**  All staff and contractors entering DOC facilities will continue to undergo a COVID-19 screening, including temperature checks and answering questions related to COVID-19 symptoms. Staff conducting the screenings will be re-trained in the use of thermometers. Following the screening, staff shall properly wash their hands before entering the facility.  Non-essential visitors will be excluded from the facility.  Any staff that have been in sustained, close contact with someone who has tested positive will be informed.

- **Access to Legal Calls:**  All residents shall be allowed 30-minute legal calls daily. DOC staff will also cooperate to facilitate incoming calls from attorneys.

- **Medical Care:**  If DOC staff observe an inmate exhibiting symptoms of COVID-19, staff shall direct that person to medical staff.

- **Additional Measures:**  DOC is also working to make better use of single cells where possible, is increasing staff through the Medical Reserve Corps to assist with provision of medical care and temperature checks, is trying to obtain additional tablets for residents to use during the duration of the emergency period, is increasing monitoring of inmates placed on quarantine, and will request deployment of mobile COVID-19 testing within DOC facilities when it becomes available.

As Judge Hollander recognized, "DOC has implemented substantial measures at CTF to protect detainees from COVID-19 and to treat those who are infected." *Lee*, ELH-19-159, ECF No. 97, at 14 (listing modified procedures implemented by DOC). Furthermore, "in this rapidly evolving situation, new information concerning the virus emerges at break-neck pace, and DOC has repeatedly revised its procedures. Now, DOC must do so again, in light of Judge Kollar-Kotelly's ruling." *Id.* at 14. *See also Dorchy*, GLR-18-172, ECF No. 218 at 4 n.2 (noting that the court in *Banks* "has not ordered that all inmates be released" and that "at least one other judge has noted that because D.C. jail facilities are the subject of Judge Kollar-Kotelly's temporary restraining order, it can be expected that the D.C. Department of Corrections 'will do everything it can to comply with that order so as to prevent the further spread of the virus to its residence and staff'" (quoting *United States v. Sagastume-Galicia*, No. 20-40 (BAH), 2020 WL 193555, at *5 (D.D.C. Apr. 22, 2020)).

Moreover, Judge Kollar-Kotelly's Order specifically denied the *Banks* plaintiffs' request for the release of prisoners as not called for by the record. *See, e.g.*, *Banks*, ECF 49 ("The Court is not ordering the release of any inmates currently detained in DOC facilities."). The *Banks* Order instead imposed specific remedies for the specific deficiencies noted in that case. As Judge Xinis recently noted, "although the D.C. District Court indeed found at this stage a likelihood that the *Banks* plaintiffs may establish Eighth and Fifth Amendment violations at D.C. Jail, that court also addressed the present harms through injunctive relief which does *not* include release or transfer of the detainees. Even if this Court were to accord the D.C. decision the weight that [the defendant] urges, so too would it credit that release is simply not compelled as a result." *Remarque*, PX-19-39, at 6. *See also Dorchy*, GLR-18-172, ECF No. 218 at 4 n.2; *United States v. Williams*, PWG-13-544 (D. Md.), ECF No. 94 (Order by Magistrate Judge Day) (acknowledging that DOC has

taken significant measures to stem the tide of the pandemic, and recognizing that "[s]hould the unfortunate event occur, the correctional authorities have in place a plan of action that should not be summarily embraced or discarded. Nor does it follow that a presumption of release materializes without more details about the impact upon [the defendant] directly."); *United States v. Cleckley*, TDC-18-344 (D. Md.), ECF No. 485 (Order by Judge Chuang) ("If the conditions prove to be unacceptable, the solution for [the defendant] will be for the Court to require improvements to the conditions or to have him moved to another detention facility, not to order [the defendant] to be released into the community.")

In short, the DOC's response to this unprecedented pandemic is rapidly evolving as it endeavors to implement measures recommended by the CDC and D.C. Department of Health, as well as the series of measures ordered by Judge Kollar-Kotelly. COVID-19 is not a problem that afflicts DOC facilities alone, and DOC continues to improve its response to the outbreak in its facilities. The defendant has not shown that any risk he faces of contracting COVID-19 within DOC facilities merits release when weighed against the other Bail Reform Act factors this Court must take into account and the continued corrective measures being implemented by DOC. *See Remarque*, PX-19-39, ECF No. 100, at 6-7 ("Finally, this decision in no way minimizes the unprecedented threat that COVID-19 has befallen on our community, country, and world, including places of confinement. For some individuals, the virus visits profound suffering, illness, and even death. This cold reality, however, does not permit the Court to cast the Bail Reform Act aside, but rather to follow it with special care to the individualized circumstances presented. When doing so here, the balance simply does not tilt in favor of Remarque's release."); *Lee*, ELH-19-159, ECF No. 97, at 13-14; *Gray*, GJH-19-0407, ECF 120 ("COVID-19 is not a virus that has specifically attacked the D.C. Jail but, rather, a global pandemic that all citizens of the world are

struggling to combat. There is no reason for the Court to believe that the jail is not taking reasonable precautions to prevent spread within the facility nor is there reason to believe that [the defendant] would not be provided with appropriate medical care if he were unfortunate enough to join the hundreds of thousands of people who have been inflicted with the virus.").

**B. The Defendant's Individual Circumstances Do Not Merit Release.**

In his motion, the defendant represents that, if he contracts COVID-19, he "is at high risk of an adverse outcome, as he suffers from high blood pressure and diabetes." ECF No. 44 ¶ 1. Acting on a Court order, *see* ECF No. 43, DOC produced the defendant's medical records to the parties. Those records are illuminating. As it turns out, the defendant's representations were wrong. The defendant does not have diabetes or diagnosed hypertension.

In any event, this Court has recently denied a number of motions by detainees claiming that they had medical conditions that made them uniquely vulnerable to COVID-19, including detainees with far more serious medical conditions than the defendant claims to have. *See, e.g.*, *Martin*, PWG-19-140 (D. Md.), ECF No. 209 (denying motion for pretrial release by detainee suffering from "diabetes, high blood pressure, asthma, and pain"); *United States v. Bilbrough*, TDC-20-33 (D. Md.), ECF No. 76 (Order by Magistrate Judge Sullivan) (denying a similar motion by a defendant suffering from diabetes, even though "experts on COVID-19 have stated that individuals with diabetes are at a higher risk of experiencing more serious complications if infected with the virus"), *aff'd* ECF No. 92 (Order by Judge Chuang); *United States v. Parker*, TDC-18-344 (D. Md.), ECF No. 478 (Order by Magistrate Judge Simms) (denying motion for pretrial release by a detainee who "suffered an aneurysm (in the past), had prostate cancer (now in remission), and presently suffers from diabetes, the latter two conditions having compromised his immune system and/or put him at a higher risk of an inability to fight infection"); *United States v.*

*Jefferson*, CCB-19-487 (D. Md.), ECF No. 25 (Order by Judge Blake) (asthma); *Williams*, PWG-13-544 (D. Md.), ECF No. 94 (67-year-old defendant); *Gray*, GJH-19-407, ECF No. 120 ("open heart surgery as a child, requires regular EKGs, and continues to experience a diminished immune system, heart flutters, and shortness of breath"); *United States v. Tucker*, GJH-19-555 (D. Md.), ECF No. 26 (Order by Magistrate Judge Day) ("a respiratory condition (severe asthma), high blood pressure, and high cholesterol"; "Defendant at no point provides medical records which substantiate his claims"); *United States v. Attia*, PWG-19-193 (D. Md.), ECF No. 53 (Order by Magistrate Judge DiGirolamo) (asthma, migraines); *United States v. Bland*, PWG-15-141 (D. Md.), ECF No. 95 (Order by Magistrate Judge Day) (asthma, seizures).]

Moreover, while the COVID-19 virus is new, health claims by detainees are not. Courts have generally recognized that "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where otherwise detention would be warranted. *United States v. Wages*, 271 Fed. App'x 726, 728 (10th Cir. 2008). These cases recognize that reasonably necessary treatments are available in prison, and often times a prison setting will provide care superior to what a defendant can obtain on the outside. *See United States v. Rodriguez,* 50 F. Supp. 2d 717, 722 (N.D. Ohio 1999). In this case, the defendant simply has not made a factual record that his medical needs will not be met while detained. Granting a defendant's motion for release based on the general threat of harm posed by COVID-19 to all flies in the face of the defendant-specific analysis required by 18 U.S.C. § 3142(f).

Furthermore, the Government notes that the defendant has provided no release plan at all, much less one that details how he would avoid or mitigate the risk of COVID-19 should he be released.

### C. Traditional Location Monitoring Is No Longer An Option for Pretrial Services.

Pretrial Services now has diminished ability to monitor defendants on home detention. Due to COVID-19, the Court has suspended traditional electronic home monitoring that relies on radio frequency or GPS to provide real-time information about a defendant's whereabouts. Although other forms of home detention are still available, "none provides 24/7 monitoring and notification." *Gibson-Bey*, RDB-19-563 (D. Md.), ECF 2, at 3 n.2. Accordingly, Pretrial Services' ability to ensure that defendants do not become a flight risk or pose a danger to the community has been significantly curtailed.

Furthermore, electronic monitoring simply is not a replacement for incarceration, as home monitoring does not prevent others from coming to the defendant's residence, which increases the risk of the defendant violating the law, as well as his exposure to COVID-19. *See, e.g.*, *United States v. McKenzie*, 18 Cr. 834 (PAE), ECF No. 457 (S.D.N.Y. April 6, 2020) (defendant who had been granted pre-sentence release based on the risk of becoming ill from COVID-19 immediately violated his release conditions and risked the health of his community by hosting a welcome-home party with numerous others).

## Conclusion

For the foregoing reasons, the Court should deny the defendant's motion for release, without a hearing.

Respectfully submitted,

Robert K. Hur
United States Attorney

/s/ ______________________________
Thomas P. Windom
Assistant United States Attorney