IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIM. NO. PWG-19-228 |
| | * | |
| SEUN BANJO OJEDOKUN, | * | |
| | * | |
| Defendant | * | |
| | * | |

********

## MOTION FOR RULE 15 DEPOSITIONS

The United States of America, by and through its attorneys, moves for permission to conduct Rule 15 depositions of all victims who will likely be unavailable to testify at trial. The Government also requests that the Court hold a hearing (either by video or in-person) regarding this motion **the week of July 6, 2020**, so that the requested depositions can be completed prior to trial. If the Court waits until the motions hearing scheduled for August 18, 2020, granting the motion at that time would necessitate a continuance of the September trial date.

### Factual Background

On April 12, 2019, United States Magistrate Judge Thomas M. DiGirolamo authorized a criminal complaint and arrest warrant for the defendant. The criminal complaint was supported by an affidavit sworn by FBI Special Agent Custer ("Custer Affidavit"). The Custer Affidavit set forth evidence of the defendant's involvement in a money laundering conspiracy. The money being laundered came from several predicate crimes, including internet-based romance scams, tax refund fraud, lottery scams, business email compromises, and other fraud later discussed in the indictment in this case. *See* ECF No. 6 ¶¶ 5-6. On May 6, 2019, a federal grand jury for the District of Maryland returned an indictment charging the defendant with promotion and concealment money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). *See* ECF No. 6.

1

Years prior, on August 28, 2014, United States Magistrate Judge Charles B. Day authorized a search warrant of one of the defendant's email accounts, opeoluwaseun@gmail.com. The Government intends to introduce information obtained from the warrant at trial. The content of the email account, at times supplemented by additional investigation, reveals the identities of roughly one dozen of the defendant's victims.[1] Certain information regarding some of those victims is listed below.

- On July 19, 2013, the defendant sent an email containing a Chase bank Wire Transfer Outgoing Request showing a $3,500 transfer from the account of Victim A, who at the time lived in Houston, Texas.

- On December 20, 2013, the defendant sent an email containing a Bank of America Remittance Transfer Receipt showing a $60,000 transfer from the account of Victim B, who at the time lived in Prescott Valley, Arizona.

- On December 23, 2013, the defendant sent an email containing a TD Canada Trust Wire Payment Instructions form showing a $15,000 wire payment from the account of Victim C, who at the time lived in Ontario, Canada.

- On January 23, 2014, the defendant sent an email containing a Domestic Wire Request Form showing a transfer of $1,559,157.22 from the account of Victim D, who at the time likely lived in New Canaan, Connecticut.

- On February 15, 2014, the defendant sent an email containing a TD Ameritrade wire transfer document showing a transfer of $47,600 from the account of Victim E.

- On May 9, 2014, the defendant received an email containing a Wells Fargo form for an Outgoing Wire Transfer Request showing a transfer of $95,000 from the account

---

[1] The contents show the existence of many other victims, but not their identities.

of Victim F, who at the time lived in San Diego, California.

- Also on May 9, 2014, the defendant received an email with a Walmart Receipt showing a transfer of $25,000 from the account of Victim G, who at the time lived in Chattahoochee, Florida.

- Also on May 9, 2014, the defendant received an email with a Wire Transfer Form showing a transfer of $10,000 from the account of Victim H, who at the time lived in Alexandria, Minnesota.

- On May 18, 2014, the defendant sent an email with a form showing a transfer of $5,000 from the account of Victim I, who at the time lived in Kincardine, Ontario, Canada.

- On May 20, 2014, the defendant received an email with a Wells Fargo form for an Outgoing Wire Transfer Request showing a transfer of $29,500 from the account of Victim J, who at the time lived in Green Valley, Arizona.

- On June 5, 2014, the defendant sent an email with a UBS form showing the name of Victim K.

The Government also has identified additional victims in this case, who may testify at trial.

## Argument

The Court should order that the Government be permitted to take depositions of each victim for purposes of the defendant's trial, as each victim will likely be unavailable to testify at trial.

**A.  The Law**

Rule 15(a) of the Federal Rules of Criminal Procedure provides, in pertinent part, that "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice."

The 1975 enactment Advisory Committee Notes, discussing depositions by a defendant, flesh out the rule to some degree: "The court may grant the motion if it appears that (a) the prospective witness will be unable to attend or be prevented from attending the trial, (b) the prospective witness' testimony is material, and (c) the prospective witness' testimony is necessary to prevent a failure of justice." "A party may use all or part of a deposition as provided by the Federal Rules of Evidence." Fed. R. Crim. Proc. 15(f). Under Federal Rule of Evidence 804(b)(1), if the declarant is unavailable as a witness, testimony taken pursuant to a lawful deposition during the current proceeding is an exception to the hearsay rule, so long as the party opposing the deposition's admission had an opportunity and similar motive to develop the deposition testimony by examination.

The Fourth Circuit has not directly addressed Rule 15's "exceptional circumstances" standard in detail, but the few Fourth Circuit cases relying on Rule 15 are consistent with reading "exceptional circumstances" as requiring the moving party to establish "at least that the witness will likely be unavailable to testify at trial and that the witness's testimony is material." *United States v. Jefferson,* 594 F. Supp. 2d 655, 664 (E.D. Va. 2009); *United States v. Hajbeh,* 284 F. Supp. 2d 380, 384 (E.D.Va. 2003). *See United States v. McHan,* 101 F.3d 1027, 1037 (4th Cir.1996) (noting that "[w]hen the government knows that a witness will be unavailable, it has the choice of seeking to preserve the witness's testimony under Federal Rule of Criminal Procedure 15, or relying at its own risk on its ability to introduce hearsay (such as the witness's grand jury testimony), or losing the benefit of the witness's testimony altogether"); *United States v. Rivera,* 859 F.2d 1204, 1207 (4th Cir.1988) (upholding district court order allowing illegal alien material witnesses to be deposed and released from custody). The Fourth Circuit caselaw is consistent with the case law from other Circuits. *See generally United States v. Liner*, 435 F.3d 920, 924 (8th Cir. 2006) ("To establish exceptional circumstances, the moving party must show

4

the witness's unavailability and the materiality of the witness's testimony."); *United States v. Kelley,* 36 F.3d 1118, 1125 (D.C. Cir. 1994) ("Critical factors . . . include (1) the materiality of the testimony; and (2) the unavailability of the witness to testify at trial."); *United States v. Ismaili,* 828 F.2d 153, 159 (3d Cir. 1987) ("[W]hen the district court exercises its discretion in ruling on a Rule 15(a) motion, considerations of materiality (of the testimony) and unavailability (of the witnesses) remain critical.").

"Unavailability is to be determined according to the practical standard of whether under the circumstances the Government has made a good-faith effort to produce the witness to testify at trial." *United States v. Mostafa*, 14 F. Supp. 3d 515, 519 (S.D.N.Y. 2014) (quoting *United States v. Johnpoll,* 739 F.2d 702, 709 (2d Cir. 1984) (citing *Ohio v. Roberts,* 448 U.S. 56, 74 (1980); *California v. Green,* 399 U.S. 149, 189 n. 22 (1970) (Harlan, J., concurring)). "The lengths to which the prosecution must go to produce a witness before it may offer evidence of an extra-judicial declaration is a question of reasonableness." *Green,* 399 U.S. at 189 n. 22 (Harlan, J., concurring).

Unavailability is determined by reference to Rule 804(a). The relevant portions of that rule applicable here are whether the witness would refuse to testify despite a court order to do so; cannot be present or testify at the trial because of a then-existing infirmity, physical illness, or mental illness; or is absent from the trial and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance. Representations by counsel are sufficient to establish the likelihood of unavailability. *Jefferson,* 594 F.Supp. 2d at 665-66; *United States v. Des Marteau,* 162 F.R.D. 364, 369 (M.D. Fla. 1995) ("[Rule] 15 does not explicitly require supporting affidavits, and representations made by counsel in open court have been held sufficient to establish probable unavailability."). Courts must assess the unavailability

of a potential witness by carefully examining all the reasonably reliable available information and then making a reasoned judgment as to a person's unavailability.

### B. The COVID-19 Pandemic

The Court, as with the whole world, is aware of the current COVID-19 pandemic. Judges of this Court have written extensively on the subject while ruling on motions for pre-trial release or compassionate release. According to Judge Blake, "[t]he world is now in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, 2020 WL 2556496, at *1 (D. Md. May 20, 2020). This Court too has recognized "the unique threat posed by the COVID-19 pandemic. The virus is highly contagious and the disease is highly fatal." ECF No. 49 at 6. Furthermore, individuals with "serious medical problems" are "at high risk for complications if they contracted COVID-19." *United States v. Williams*, PWG-19-134, ECF No. 70 at 7 (Grimm, J.) (Order granting compassionate release). *See also United States v. Morrison*, PWG-19-284, ECF No. 44 at 8 (Grimm, J.) (Order granting compassionate release) ("The CDC has advised that individuals who have serious underlying medical conditions might be at higher risk of severe illness from COVD-19.").

### C. The Victims Likely Will Be Unable To Attend Trial.

For the reasons above, and consistent with the 1975 enactment Advisory Committee Notes, "it appears that" the victims "will be unable to attend or be prevented from attending the trial." Their inability is entirely the cause of the response to and concerns regarding COVID-19. For example, to date, two of the victims—Victim F and Victim H—both have been apprised of the trial date and expressed reluctance to travel. To be clear, the Government continues its outreach efforts to the victims, including attempting to ascertain any specific physical or medical limitations on their ability to travel interstate or be present in a courtroom with roughly two dozen other people. But it is a near certainty that some, if not all, of the victims may refuse to appear in federal

court in Greenbelt, Maryland, despite a court order to do so, or otherwise cannot be present or testify at the trial because of a then-existing medical condition. *Cf. United States v. Yates*, 2020 WL 3316053, at *7 (denying motion to transfer venue and stating that "because it is a given that travel by air will be required for a good number of participants, the trial will not be able to proceed, whether it is here [in Connecticut] or in California, until the safety of airline passengers can be reasonably assured."); *United States v. Scher*, 2020 WL 3086234, at * 3 (D. Haw. June 10, 2020) (denying compassionate release motion and noting that "Although the coronavirus is not as active in Hawaii as it is elsewhere, to return to Hawaii, Scher will have to board an airplane, and that travel alone could present increased risks of contracting COVID-19. Possibly, the travel risks could lessen in the coming months, either because the virus subsides or because airlines implement better ways to reduce the risk.").

The Government is filing this motion pending the receipt of further information from the victims. For now, the Court must only determine whether it appears likely that the victims will be unable to attend trial. The Court need not make any ultimate determination regarding the victims' unavailability within the meaning of the Federal Rules of Evidence until the Government seeks to introduce their deposition testimony at trial. *See* Fed. R. Crim. P. 15 ("An order authorizing a deposition to be taken under this rule does not determine its admissibility. A party may use all or part of a deposition as provided by the Federal Rules of Evidence."); Fed. R. Evid. 804(b)(1) (excluding from hearsay lawful deposition testimony only "if the declarant is unavailable as a witness").[2]

---

[2] Here, the Government may only compel the domestic victims' appearance with a trial subpoena; the Government has no ability to compel foreign victims with trial subpoenas. And realistically, the Government would not likely be in a position to reasonably enforce a trial subpoena compelling even a domestic victim's attendance at trial, short of seeking and securing a material witness warrant, taking the victims into custody, and having them physically transported through interstate, custodial transport by the U.S. Marshals.

**D. The Victims' Testimony Is Material and Necessary To Prevent a Failure of Justice.**

The victims were defrauded of substantial sums of money, and their names appear on financial documents in the email account of the defendant, who at the time of the events lived in Nigeria. Their testimony proves the money laundering conspiracy, as well as the criminal conduct from which the proceeds were generated. There is no question that their testimony is material.

Furthermore, though not strictly necessary under prevailing Fourth Circuit caselaw to establish the propriety of a Rule 15 deposition, the Government respectfully submits that a failure to take the victims' depositions would result in a failure of justice. Without the victims' testimony, the jury will be deprived of specific, factual information that is of high relevance to the determination of the defendant's guilt.

**E. Taking a Rule 15 Deposition Will Not Prejudice the Defendant.**

Finally, taking the victims' depositions under Rule 15—with the expectation that the depositions would later be introduced at trial, subject to the Federal Rules of Evidence—does not violate the defendant's confrontation rights. The Confrontation Clause does not preclude admission of prior testimony of an unavailable witness, *Mattox v. United States,* 156 U.S. 237 (1895), provided the victims' unavailability is shown and the defendant had an opportunity to cross-examine the witness. *See Ohio v. Roberts,* 448 U.S. 56, 73 (1980); *Mancusi v. Stubbs,* 408 U.S. 204, 216 (1972); *California v. Green,* 399 U.S. 149, 165–66 (1970). Here, the defendant will have a full opportunity, with his counsel, to confront and cross-examine the victims. Accordingly, there would be no violation of the defendant's Sixth Amendment rights by permitting Rule 15 depositions.

**Conclusion**

Accordingly, a request for depositions of the victims in this case is reasonable and based on exceptional circumstances. The Government requests that the Court order such Rule 15 depositions.[3] Under Rule 15(c) and (d), the defendant has the right to be present at the deposition, with his counsel, at the Government's expense. However, since the defendant is in custody and for other practical reasons, the Government anticipates seeking the defendant's consent to take the depositions by video conference.

        Respectfully submitted,

        Robert K. Hur
        United States Attorney

By: /s/
        Thomas P. Windom
        Assistant United States Attorney

---

[3] For the foreign victims, the Government will seek their voluntary participation, as they are not subject to traditional compulsory trial process.