IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIM. NO. PWG-19-228 |
| | * | |
| SEUN BANJO OJEDOKUN, | * | |
| | * | |
| Defendant | * | |
| | * | |
| ******* | | |

**CONSOLIDATED OPPOSITION TO DEFENSE MOTIONS**

The defendant, through former and present counsel, has filed three motions: a motion to suppress his incriminating statements, ECF No. 20; a motion to suppress an email search warrant, ECF No. 54; and a motion to suppress the contents of his cell phone, ECF No. 55. None of the motions have merit. For the reasons below, each should be denied.

**Argument**

**A.    Motion to Suppress Email Search Warrant**

On August 28, 2014, based on a 50-page affidavit of Agent Custer, United States Magistrate Judge Charles B. Day authorized a search warrant for 19 email accounts associated with the defendant and his co-conspirators. *See* **Exhibit A (filed under seal)** (hereinafter, the "Custer Affidavit"). The Government intends to introduce information obtained from the warrant at trial. In what can only be described as a "bare bones" motion, the defendant moves to suppress the contents of the only one of the 19 email accounts for which he has standing, Target Email 16.[1] *See* ECF No. 54. His motion is meritless and should be denied.

---

[1] The defendant's motion alludes to two of the defendant's other email accounts that were allegedly "apparently warrantlessly searched." The Government is unfamiliar with any warrantless search of those two accounts.

      **1.**      **Applicable Legal Standard**

When issuing a warrant and making a probable cause determination, judges use a "totality of the circumstances analysis." *United States v. Grossman*, 400 F.3d 212, 217 (4th Cir. 2005). The issuing judge is in the best position to determine if probable cause has been established in light of the circumstances as they appear at the time. The magistrate judge's decision is one that courts review with "great deference." *Id.* "Probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The probable cause determination is a "practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. *See also Grossman*, 400 F.3d at 217.

      **2.**      **The Warrant Was Supported by Probable Cause**

The Custer Affidavit in support of the warrant begins with an explanation of Agent Custer's background, training, and knowledge, including his personal participation in the investigation and his resolve in obtaining at least three prior search warrants while investigating the wide-ranging conspiracy. **<u>Exhibit A</u>** at 1-5. The Custer Affidavit expends much ink summarizing the scheme to defraud, identifies specific victims with particularity, links victims to the email accounts sought to be searched, and also links prior warrant returns to the email accounts now sought. *Id.* at 5-35. A prior warrant had uncovered evidence that one of the lead defendants, Mukhtar Danjuma Haruna, used one of his email accounts "to coordinate the distribution of proceeds from the fraud scheme." *Id.* at 24-25. Further, the Haruna email account had "regularly received emails from TARGET ACCOUNTS 2-17 containing evidence of fraud." *Id.* at 25. The defendant's email account, Target Email 16, was one of those accounts. The Custer Affidavit included as Exhibit 1

examples of several of the fraud-related emails.  A review of the included image sent to Haruna from Target Email 16 shows substantial circumstantial evidence of wire fraud: a single image of an ATM receipt showing a $2,800 deposit into one of charged co-conspirator Ogundele's bank accounts (ending in x4126), which as the Court knows is wheelhouse evidence of the wire fraud scheme.  *Id.* at 45.  Further, the email from Target Email 16 to Haruna, dated April 26, 2014, falls squarely in the timeframe of the fraud money deposits described in the August 2014 warrant, which shows 28 deposit slips from Haruna's email account from April 2014.  *Id.* at 28-29.

Notwithstanding the overwhelming basis for the warrant, the defendant complains that the Custer Affidavit only includes one image from Target Email 16 and that "[n]othing on the face of the receipt was indicative of any criminal activity."  ECF No. 54-1.  This terse description ignores the remainder of the affidavit, in which Agent Custer links Target Email 16 to the other 18 email addresses, and describes in detail how images just like the one in Target Email 16 were used to further the wire fraud conspiracy.  The defendant's argument also minimizes the basis of Agent Custer's reasonable and supported belief that Target Email 16 would contain evidence of criminal activity, going so far as to mischaracterize Agent Custer's 50-page affidavit as not just "bare bones" but "utterly lacking in bones."  The defendant fails to point to any case in which an ample, supported 50-page affidavit in support of a search warrant was found *not* to contain probable cause.

Contrary to the defendant's bald assertions, the Custer Affidavit's detailed narrative of the evidence against the defendant was more than enough for Magistrate Judge Day to find probable cause for the FBI to search the defendant's email account.  The specific evidence showing that the defendant's email account was being used to further criminal activity was above and beyond what the Fourth Circuit requires.  *See Grossman*, 400 F.3d at 217 (noting that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and

3

the normal inferences of where one would likely keep such evidence") (internal citations and quotation marks omitted). Accordingly, the defendant's motion should be denied.

### 3. The Good-Faith Exception Applies

In the event that the Court strikes down the search warrant for any reason, it should apply the good-faith exception and decline to suppress the information obtained from the warrant, because law enforcement acted in objectively reasonable reliance on the warrant. *See United States v. Leon*, 468 U.S. 897, 922 (1984); *United States v. Perez*, 393 F.3d 457, 460 (4th Cir. 2004); *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993) (noting that the good-faith exception provides that "evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause"). The defendant expends little effort arguing that the good-faith exception does not apply. *See* ECF No. 54-1 at 4. It clearly does. Agent Custer was seeking at least his fourth email warrant while investigating numerous actors in the wide-ranging conspiracy.

### B. Motion to Suppress Statements

The defendant claims that his statements on April 25, 2019, should be suppressed because he was in custody, thereby triggering Fourth Amendment protection, and he did not waive his *Miranda* rights. ECF No. 28 at 2. Since the defendant was not in custody at the time of his voluntary interview with two FBI agents, the agents had no obligation to inform the defendant of his *Miranda* rights. His motion should be denied.

### 1. Applicable Legal Standard

Not every contact between law enforcement officers and citizens constitutes a Fourth Amendment "seizure." *Terry v. Ohio,* 392 U.S. 1, 19 n.16 (1968). "A seizure warranting Fourth Amendment protection occurs when in view of the totality of the circumstances, a reasonable

4

person would not feel free to leave or otherwise to terminate an encounter with police." *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013) (citing *United States v. Lattimore,* 87 F.3d 647, 653 (4th Cir. 1996)). As a general rule, a seizure requires either the use of physical force or, absent the use of such force, a submission to an officer's assertion of authority. *See California v. Hodari D.,* 499 U.S. 621, 626 (1991).

"Circumstances where the citizen would feel free to go, but stays and has a dialogue with the officer, are considered consensual, and therefore do not implicate the Fourth Amendment." *United States v. Weaver*, 282 F.3d 302, 309 (4th Cir. 2002). "While most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *I.N.S. v. Delgado,* 466 U.S. 210, 216 (1984). In applying the totality of the circumstances test, courts look to numerous factors including the time, place, and purpose of the encounter; the words used by the officer; the officer's tone of voice and general demeanor; the officer's statements to others present during the encounter; the threatening presence of several officers; the potential display of a weapon by an officer; and the physical touching by the police of the citizen. *See Florida v. Bostick,* 501 U.S. 429, 437 (1991); *Michigan v. Chesternut,* 486 U.S. 567, 571-76 (1988); *United States v. Mendenhall,* 446 U.S. 544, 554 (1980).

### 2. The Defendant Was Not In Custody.

Agent testimony at a motions hearing will establish the facts relevant to the Court's analysis. The Government believes the agent testimony will include certain information documented in the FD-302 of the consensual interview on April 25, 2019. *See* **Exhibit B** **(filed under seal)**. Moreover, here the Court has the benefit of an audio recording of the entire encounter between the defendant and FBI agents. *See* **Exhibit C** **(audio recording filed under seal)**.

Initially, and fundamentally, no seizure occurred here because (1) agents did not use force, and the defendant does not contend otherwise, and (2) agents made no assertion of authority, so the defendant did not submit to the assertion that was not made. The defendant, who was in his own residence, voluntarily allowed two FBI agents into his home.[2] **Exhibit C** at 00:51–1:20. At the inception of the interview, agents advised the defendant that "this is a completely voluntary interview, okay. So if you don't want to answer my questions, you don't have to. But I think you might have some information that can help us out." *Id.* at 1:45–2:04. The defendant responded, "Okay." During the interview, the defendant was in possession of his cell phone, which the defendant used to contact his boss from his place of employment to let him know that the defendant would be late to work. *Id.* at 29:30–31:40. *See United States v. Hargrove*, 625 F.3d 170, 179 (4th Cir. 2010) (finding no custody during search warrant in which roughly fifteen agents participated, defendant was not handcuffed, no firearms were drawn, and no threats were made). Also during the interview, the defendant provided the agents with voluntarily consent to search his phone—which entailed signing a consent form in which he acknowledged his right to refuse consent. *See* **Exhibit C** (31:40–32:25); **Exhibit D**. The defendant, who acknowledged being able to read and write the English language, **Exhibit C** at 32:31–32:37, at any time could have ceased talking. Instead, the defendant chose to speak.[3] The defendant knew that he was not in custody and knew that he had no obligation to consent to questioning, but instead consented to an interview in which he gave incriminating statements. Any claim to the contrary is factually unfounded.

---

[2] The defendant's motion erroneously claims that eight federal agents were involved in the interview. ECF No. 20 at 2.

[3] The defendant's motion erroneously claims that the defendant "was directed to make a statement and did so." ECF No. 20 at 2. The audio recording puts the lie to this claim.

Notwithstanding the clear caselaw and attendant facts, the defendant claims that he would have been arrested had he chosen not to voluntarily speak, and therefore—even though he had no idea he would have been arrested at the time he voluntarily spoke—his statement should be deemed to be custodial.  ECF No. 20 at 2.  The defendant cites no caselaw in support of his position.  That likely is because the caselaw, which requires an objective test, is to the contrary.  *See United States v. Mikerin*, 2015 WL 2227698, at **4-6 (D. Md. May 7, 2015) (Chuang, J.).[4]

### 3. The Defendant's Statement Was Voluntary.

In an aside, the defendant claims that his April 12, 2016, statements should be suppressed because they were not voluntary within the meaning of the Fourth Amendment.  ECF No. 20 at 3.  The argument is not fleshed out in the motion, and it is hard for the Government to respond to an argument left unmade.  Nonetheless, we submit the below.

The voluntariness of a defendant's statements depends on the "totality of all the surrounding circumstances," including the characteristics of the defendant, the setting of the interview, and the details of the interrogation.  *United States v. Wertz*, 625 F.2d 1128, 1134 (4th Cir. 1980); *Spano v. New York*, 360 U.S. 315, 322-23 (1959).  In weighing the voluntariness of statements, the crucial test is whether a defendant's will has been "overborne" or his "capacity for self-determination critically impaired."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).

---

[4] The defendant's motion to suppress focuses only on the interview with FBI agents at his residence.  By failing to make the argument, the defendant apparently concedes the propriety of certain other statements he made that day.  For example, at the conclusion of the interview at the residence, Agent Custer informed the defendant that a warrant commanded the defendant's arrest.  **Exhibit C** at 1:09:30.  When the defendant was placed under arrest, Agent Custer advised the defendant of his *Miranda* rights.  **Exhibit C** at 1:14-15–1:15:15.  A later portion of the audio recording covers a time when the defendant undoubtedly was in custody and had been advised of his *Miranda* rights, at the FBI field office in Chicago after having been arrested by the FBI agents.  During this encounter, the defendant agreed that he "got involved with the wrong people."  **Exhibit C** at 2:52:00–2:52:15.

Voluntariness is not, however, "equated to the absolute absence of intimidation," since such a test would render virtually all statements involuntary. *Wertz*, 625 F.2d at 1134.

Based on the circumstances outlined in the FD-302 and heard on the audio recording, and as will be expanded on during the motions hearing, the defendant cannot persuasively claim that his statements were involuntary. The defendant's will was not overborne. No guns were drawn by the two agents. *Cf. United States v. Cristobal*, 293 F.3d 134, 141 (4th Cir. 2002) (finding that the presence of multiple agents outside a suspect's hospital room did not defeat the voluntariness of the statements because only one agent actually interviewed the suspect). The defendant, aged 35 at the time, was fully clothed during the consensual interview and not restrained or touched in any way. The defendant was told he was free to refuse to answer questions and used his telephone to contact his boss. The agents' actions during the consensual interview did not effect a seizure of the defendant within the meaning of the Fourth Amendment. The defendant's statements were voluntary and should not be suppressed.[5]

### C.     Motion to Suppress Cell Phone Contents

The defendant moves to suppress the contents of his cell phone. ECF No. 55. In his motion, the defendant erroneously claims that "eight federal agents . . . interrogated him in the absence of Miranda rights advice, directed him to produce his cell phone, directed him to consent to a search of his cell phone, and seized that cell phone." ECF No. 55 at 1. The defendant's allegations stand in contrast to the crisp audio recording, in which the defendant voluntarily consents to two agents searching his cell phone. *See* **Exhibit C** (31:40–32:25); **Exhibit D**. In any event, even if a *Miranda* violation occurred (it did not), the contents of the cell phone could not be

---

[5] In his motion to suppress his statement, the defendant makes a subsidiary claim that, if his statement is suppressed, the contents of his cell phone should be suppressed as fruit of the poisonous tree. ECF No. 20 at 3. Since the defendant filed a separate motion to suppress the contents of his cell phone, ECF No. 55, the Government will respond only to the distinct motion.

suppressed, based on binding Supreme Court and Fourth Circuit caselaw. *See United States v. Patane*, 542 U.S. at 633 (2004) (holding that tangible evidence derived from voluntary statements obtained in violation of *Miranda* do not merit suppression); *United States v. Ogundele*, 933 F.3d 302, 309-310 (4th Cir. 2019) (same, and affirming district court ruling by Grimm, J., with respect to cell phone contents).

## **Conclusion**

The Court should deny the defendant's motions.

Respectfully submitted,

Robert K. Hur
United States Attorney

By: /s/
Thomas P. Windom
Assistant United States Attorney