UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | NO. 8:19CR228-01 |
| SEUN BANJO OJEDOKUN | § § | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE IN OPPOSITION TO MOTION FOR RECONSIDERATION**

The defendant, Sean Banjo Ojedokun, submits this reply to the Government's response in opposition to the defendant's motion for reconsideration.

I. **The Government Errs in Contending that the Fourth Circuit's Decision in *Smith* Does Not Require Reference to the Particular "Specified Unlawful Activity" in a Section 1956(h) Charge**.

The Government initially contends that *United States v. Smith*, 44 F.3d 1259, 1265 (4th Cir. 1995), is "inapposite" because, according to the Government, the Fourth Circuit did not hold that a section 1956 charge must articulate the particular "specified unlawful activity" by offense name and statutory citation. *See* Government's Response, at 2. The Government claims that the defendant's reading of *Smith* "confuses what is sufficient with what is necessary" to plead. *Id.*

It is the Government, rather than the defendant, which misinterprets the Fourth Circuit's decision in *Smith*. The Fourth Circuit, by necessary implication,

held that a section 1956 charge in an indictment must articulate which particular predicate offense constitutes the alleged specified unlawful activity, although such an allegation need not be "detailed." *See Smith*, 44 F.3d at 1265 ("Count 9 of Smith's indictment alleged not only that proceeds were derived from specified unlawful activity, *but that the activity violated 18 U.S.C. § 1343, which penalizes wire fraud.  **Nothing more need be alleged**.") (emphasis added).  "Nothing more" necessarily implies "but nothing less."  Otherwise, the Fourth Circuit would have held that a section 1956 charge need not allege anything other than the unadorned statutory language "specified unlawful activity."  But that is not what the Fourth Circuit held in *Smith*.[1]

## II. This Court's Decision in *Popoola* Did Not Address the "Exact Argument" Made by Mr. Ojedokun.

The Government next invokes this Court's very recent decision in *United States v. Popoola*, PWG-15-277-5 (D. Md. Dec. 15, 2020) ("*Popoola* Order"), and contends that this Court "addressed this exact argument" in denying that *pro se*, incarcerated defendant's section 2255 motion.  *See* Government's Response, at 2.

---

[1] *See also United States v. Martinelli*, 454 F.3d 1300, 1309-10 (11th Cir. 2006) ("For our purposes, *it is sufficient that the indictment alleged the 'specified unlawful activity' of mail fraud, in violation of 18 U.S.C. § 1341, and that mail fraud is listed as a ['specified unlawful activity.']*.") (emphasis added); *United States v. Caldwell*, 302 F.3d 399, 413 (5th Cir. 2002) ("We agree with the Fourth Circuit's analysis of the 'specified unlawful activity' element in *Smith*. Accordingly, we conclude that the statement in Caldwell's indictment indicating that the $225,000 *was derived from mail fraud in violation of § 1341 sufficiently alleges the 'unlawful activity' element of money laundering."*) (emphasis added).

This Court not only did not address the "exact argument" raised by Mr. Ojedokun but also did not have the benefit of a defense attorney's presentation of the legal arguments for Popoola (who represented himself).

In *Popoola*, this Court addressed whether that defendant's appellate counsel provided ineffective assistance of counsel by failing (for the first time on appeal[2]) to challenge the defendant's conviction as invalid under Federal Rule of Criminal Procedure 7(c)(1)[3] based on the indictment's allegation of wire fraud conspiracy as the "specified unlawful activity" in the section 1956(h) count of the indictment. This Court concluded that his appellate counsel was not ineffective for failing to raise that issue on appeal because "the indictment . . . included specific allegations of standalone substantive acts of wire fraud" (an offense that does qualify as a "specified unlawful activity") – thus putting the defendant on notice of a legally-viable specified unlawful activity.  *See Popoola* Order, at 7 (citing Indictment ¶¶ 7(a)-(m), the "overt acts" alleged in the section 1956(h) charge in Popoola's

---

[2] Such an issue raised for the first time on appeal is subject to the stringent "plain error" standard.  *See* FED. R. CRIM. P. 52(b).

[3] Rule 7(c)(1) provides in pertinent part that: "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government. It need not contain a formal introduction or conclusion. A count may incorporate by reference an allegation made in another count. A count may allege that the means by which the defendant committed the offense are unknown or that the defendant committed it by one or more specified means. For each count, the indictment or information must give the official or customary citation of the statute, rule, regulation, or other provision of law that the defendant is alleged to have violated."

indictment).  Notably, this Court did not address the issue in the context of whether such an indictment tolled the statute of limitations when it was later superseded with a new indictment that substituted a proper predicate offense as the specified unlawful activity.  Nor did this Court address the issue from the perspective of a "preserved" claim in the district court (which is how Mr. Ojedokun has presented the issue).  And, as noted, at least implicitly, this Court in *Popoola* addressed the issue from the perspective of how an appellate court would have ruled on the issue when raised for the first time on appeal.

As explained in Mr. Ojedokun's motion for reconsideration, the original indictment in this case simply did not charge a viable section 1956(h) offense – and, for that reason, did not toll the statute of limitations.  The defect in the original indictment – which appeared in the "charging paragraph,"[4] the critical part of the indictment – was fatal.  *See United States v. Hayes*, 775 F.2d 1279, 1282 (4th Cir.1979) ("The indictment must charge all the essential elements of a criminal offense and sufficiently apprise the defendant of what he must be prepared to meet so he will not be misled while preparing his defense, and it must protect the

---

[4] The "charging paragraph" of the indictment is the portion that actually articulates the charge – that "sets forth the gravamen of the offense," including the essential elements of the charged offense.  *See United States v. Schnabel*, 939 F.2d 197, 203 (4th Cir. 1991); *United States v. DePalma*, 461 F. Supp. 778, 798 (S.D.N.Y. 1978).  The indictment's "charging paragraph" should be distinguished from the "means paragraph."  *DePalma*, 461 F. Supp. at 798.  Allegations in the "means paragraph" cannot cure a fatal defect in the "charging paragraph."

defendant against later prosecution for the same offense.") (citing *Russell v. United States*, 369 U.S. 749, 763-764 (1962)).  The defect in the charging paragraph of the original indictment was not one merely of "form."  It alleged a non-existent specified unlawful activity – and, thus, failed to allege an essential element of the charged offense.

To the extent that the Government is asking this Court to extend its reasoning in *Popoola* to the limitations issue in this case,[5] this Court should decline the invitation.  Including an alleged act that qualifies as a specified unlawful activity in the "means" paragraph of a conspiracy charge does not cure an error in the charging paragraph – at least when the charging paragraph itself (¶ 7 of the original indictment in the instant case) alleged non-existent specified unlawful activity (*i.e.*, wire fraud conspiracy).  Furthermore, any alleged "substantive" acts of wire fraud in the "means" paragraph were surplusage because a section 1956(h) charge does not require proof of any criminal act as an element. *See Whitfield v. United States*, 543 U.S. 209, 219 (2005) ("[C]onviction for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), does not require proof of an

---

[5] Even for Rule 7(c)(1) notice purposes, a charge's failure to allege a predicate crime that falls within the statutory list of "specified unlawful acts" in the "charging paragraph" does not give the defendant adequate notice.

overt act in furtherance of the conspiracy."). Surplusage does not cure a fatal defect in the charging paragraph.

In this Court's order in *Popoola*, its reliance on *United States v. Liersch*, No. 04CR02521, 2005 WL 6414047, at *11 (S.C. Cal. May 2, 2015), *see Popoola* Order, at 7, was misplaced. In *Liersch*, the defendant erroneously alleged that his indictment charged wire fraud conspiracy as the "specified unlawful activity" when, as the court in *Liersch* noted, the indictment properly charged mail fraud and interstate transportation of stolen activities as the specified unlawful activities (in the charging paragraph and *not* merely as overt acts or in the means paragraph). *See* **Appendix A** (¶ 7 of the indictment in *Liersch*, at page 3). Thus, the overt acts in Poopola's indictment (¶¶ 7(a)-(m)) were not equivalent to the actual unlawful specified activities alleged in the charging paragraph in *Liersch*.

Because the superseding indictment in the instant case "broaden[ed] or "substantially amend[ed]"[6] the charge contained in the original indictment, the

---

[6] *United States v. Briscoe*, Criminal No. RDB-20-0139, 2020 WL 5076053, at *2 (D. Md. Aug. 26, 2020) ("A superseding indictment filed outside of the limitations period may 'relate back' to an earlier, timely indictment. *See United States v. Snowden*, 770 F.2d 393, 398 (4th Cir. 1985). 'As long as a superseding indictment does not broaden or substantially amend the original indictment, the superseding indictment relates back to the filing of the original indictment, even if the superseding indictment is filed outside of the statute of limitations period.' *United States v. Brown*, 580 F. Supp. 2d 518, 520 (W.D. Va. 2008) (citing *United States v. Grady*, 544 F.2d 598, 601-02 (2d Cir. 1976)).").

original indictment did not toll the statute of limitations. The superseding indictment was thus untimely and should be dismissed with prejudice.

### III. This Court Lacks Extraterritorial Jurisdiction Under Section 1956(f).

The Government's initial suggestion that this issue is "waived" lacks merit. This issue raised concerns this Court's subject-matter jurisdiction and thus can be raised at any point.[7] The Government also fails to address the defendant's statutory interpretation argument based on (1) the language of section 1956(f); (2) the fact that Congress added section 1956(h) several years *after* enacting section 1956(f) but did not modify the language of section 1956(f); and (3) the fact that the Supreme Court in *Whitfield* interpreted section 1956(h) as not having any "act" element.

Section 1956(f), enacted in 1986 as part of the original money laundering statute, provides in relevant part that: "There is extraterritorial jurisdiction *over the conduct prohibited by this section* if . . . the conduct is by a United States citizen *or, in the case of a non-United States citizen, the conduct occurs in part in the United States . . .*" (emphasis added). The underscored language is, at the very least, ambiguous concerning whether a non-United States citizen *himself* must

---

[7] *United States v. Lloyds TSB Bank PLC*, 639 F. Supp.2d 314, 317 (D. D.C. 2009) (describing § 1956(f) as governing "subject matter jurisdiction"); *see also United States v. Beasley*, 495 F.3d 142, 147 (4th Cir. 2007) ("[T]he lack of subject matter jurisdiction can be raised at any time.")

7

engage in the "conduct [that] occurs [at least] in part in the United States" for extra-territorial jurisdiction to exist over him. Although the second clause ("in the case of a non-United States citizen, the conduct occurs in part in the United States") does not explicitly state that the required conduct is *"**by** a non-United States citizen"* in the same manner as the first clause ("the conduct is by a United States citizen"), the language of the second clause is susceptible of that interpretation based on the phrase, "or, in the case of a non-United States citizen." In other words, in interpreting the meaning of "conduct" in section 1956(f), it is either the conduct by a United States citizen (anywhere in the world) or conduct by a noncitizen that occurs at least in part within the United States. That interpretation finds support in the legislative history. *See* S. Rep. No. 433, 99th Cong., 2d Sess., at 14 (Sept. 3, 1986) ("Section 1956(f) is intended to clarify the jurisdiction of U.S. courts over extraterritorial acts that could be construed to fall within the scope of section 1956. It is not the Committee's intention to impose a duty on foreign citizens operating wholly outside of the United States to become aware of U.S. laws.").

Significantly, section 1956(f)'s statement, "conduct prohibited by this section" (*i.e.*, section 1956), obviously refers to the specific subsection(s) of section 1956 charged in a particular case. The only subjection charged in the instant case is section 1956(h), which concerns a money-laundering conspiracy.

8

The Government did not charge Mr. Ojedokun with any "substantive" offense.  As has been noted, the only "conduct" that constitutes a violation of section 1956(h) is a mere agreement among conspirators.  No type of act is an element of the conspiracy offense.  *See Whitfield*, *supra.*

Therefore, the question is whether Mr. Ojedokun's "conduct" during the time period alleged in the indictment "occur[red] in part in the United States."  It did not.  His alleged "conduct prohibited by" section 1956(h) – conspiring with others – occurred entirely abroad.  Because he was charged solely under section 1956(h), whether his unindicted coconspirators[8] engaged in separate "conduct" within the United States is irrelevant under the clause of section 1956(f) that sets forth the requirements for extraterritorial jurisdiction "in the case of a non-United States citizen."  Notably, before section 1956(h) was enacted, a foreign defendant charged under some other subsection of 1956 for his activities abroad necessarily would have had to have engaged in some *act* ("conduct") that at least aided and abetted money-laundering conduct occurring within the United States (*e.g.*,

---

[8] Significantly, Mr. Ojedokun is the sole defendant charged in the superseding indictment.  Therefore, his interpretation of section 1956(h) is even more reasonable given the language of section 1956(f) – *"in the case of a non-United States citizen,* the conduct occurs in part in the United States . . . ." (emphasis added).  The plain meaning of the word "case" is a court "case" or prosecution, which is initiated with an indictment.  When the indictment only charges a noncitizen under section 1956, *his* conduct must have occurred at least in part within the United States.

accepting ill-gotten money wired from an account in the United States).[9]  That is clearly what Congress had in mind in enacting the statutory language about "non-United States citizens" in section 1956(f).  Yet, as noted, commission of a section 1956(h) offense does not require a foreign defendant to do anything except *agree* to commit a money laundering offense.  *See United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008) ("The gravamen of [conspiracy] is an agreement to effectuate a criminal act.") (citation and internal quotation marks omitted).  Such an agreement on the part of a foreign defendant who is abroad during the entire duration of the charged conspiracy does not occur "in part" within the United States.

In addition, regardless whether in other contexts extraterritorial jurisdiction exists over foreign defendants who, when abroad, merely conspired with conspirators physically present in the United States, *see, e.g.*, *Ford v. United*

---

[9] As noted in the legislative history of section 1956(f):

> Section (f) . . . limit[s] extraterritorial jurisdiction over the offense to situations in which the interests of the United States are involved, either because the defendant is a U.S. citizen or because the transaction occurred in whole or in part in the United States.  An example of the latter is a situation in which a person transfers by wire the proceeds of a drug transaction from a bank in the United States to a bank in a foreign country; another example is a situation is which a person telephones instructions from the United States to one foreign bank to transfer such proceeds to another foreign bank.

S. Rep. No. 433, 99th Cong., 2d Sess., at 14 (Sept. 3, 1986).  Because section 1956(f) was enacted years before section 1956(h) was added, section 1956's references to "conduct" clearly were aimed at actual "transactions" (as opposed to mere conspiratorial agreements).

*States*, 273 U.S. 593, 619-24 (1927), *the language of section 1956(f) is what matters here*. If there is ambiguity in section 1956(f) concerning this Court's jurisdiction over Mr. Ojedokun, then this Court must find that no extraterritorial jurisdiction exists and dismiss the indictment. *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 455-56 (2007) ("[T]he presumption is not defeated . . . just because [a statute] specifically addresses [an] issue of extraterritorial application; it remains instructive in determining the extent of the statutory exception.") (citations and internal quotation marks omitted); *cf. United States v. Santos*, 553 U.S. 507, 514 (2008) (rule of lenity); *see also United States v. Lanier*, 520 U.S. 259, 265-66 (1997) (due process requires fair notice of what is criminal in order for the defendant to be later prosecuted).

The Government faults the defendant for citing "zero relevant cases in support of his argument that the instant facts, when considered in the framework of § 1956(h), are subject to these legal constructions." Government's Response, at 5, n.3. The Government's argument is untenable. As an initial matter, the defendant has cited relevant cases – including Supreme Court decisions about the presumption against extraterritorial jurisdiction when ambiguity exists in a statute specifically addressing extraterritorial jurisdiction. The specific textual arguments based on the interaction of sections 1956(f) and 1956(h) made here are admittedly novel. But simply because no other defendant has made those specific arguments

11

(and, thus, no other court has addressed them) is no reason to discount them. Extraterritorial application of section 1956(h) has occurred in relatively few cases. This case presents the opportunity for this Court to address the arguments.

## CONCLUSION

For all these reasons, this Court should vacate Mr. Ojedokun's conviction and dismiss the superseding indictment. In view if the complexity of the legal arguments presented, the defendant requests the opportunity for oral argument.

Respectfully submitted,

/s/ *Brent E. Newton*
Brent E. Newton
Maryland Attorney # 2002060016
brentevannewton@gmail.com
19 Treworthy Road
Gaithersburg, MD 20878
202-975-9105

**Attorney for the Defendant**

## CERTIFICATE OF SERVICE

On December 22, 2020, I electronically filed this reply with the Clerk of Court using the CM/ECF system, which will send notification to all counsel of record.

/s/ *Brent E. Newton*
Brent E. Newton