**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                              |   |                                |
|------------------------------|---|--------------------------------|
|                              | * |                                |
| **UNITED STATES OF AMERICA** | * |                                |
| **v.**                       | * |                                |
|                              |   | **CRIMINAL NO. PWG-19-228**    |
| **SEUN BANJO OJEDOKUN,**     | * |                                |
| **Defendant**                | * |                                |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Seun Banjo Ojedokun was convicted by a jury on September 15, 2020 of a single count of promotion and concealment money laundering conspiracy, in violation of 18 U.S.C. § 1956(h). The superseding indictment on which he was tried alleged that the "specified unlawful activity" of the money laundering conspiracy was wire fraud, in violation of 18 U.S.C. § 1343.  ECF No. 79. The superseding indictment was returned by the grand jury on August 10, 2020.  It superseded the original indictment, which was returned on May 6, 2018.  ECF No. 6.  The original indictment also charged a single count of promotion and concealment money laundering conspiracy, but the "specified unlawful activity" was identified as *conspiracy* to commit wire fraud, in violation of 18 U.S.C. § 1349.  In both the original and superseding indictments, the conduct involved in the conspiracy ended in March, 2015, more than five years before the return date of the superseding indictment.

After the Government filed the superseding indictment, Ojedokun's retained counsel filed a motion to dismiss it based on a variety of asserted deficiencies, one of which was that it was time barred by the statute of limitations.  ECF No. 86; 18 U.S.C. § 3282.  The issue was briefed (ECF

Nos. 86, 94) and following a hearing, I denied the motion to dismiss, finding that the superseding indictment neither broadened nor substantially amended the original charge. ECF No. 96. Following his conviction, Ojedokun's retained counsel filed a "Motion for New Trial and/or Motion to Dismiss," which, *inter alia*, reprised the statute of limitations argument. ECF No. 128. I denied it, ECF No. 140, and shortly thereafter Ojedokun's retained counsel withdrew his appearance. ECF No. 141. A CJA panel attorney then was appointed to represent Ojedokun. Ojedokun's new counsel filed a motion for reconsideration of my earlier denial of his motion for a new trial. ECF No. 146. It cited new authority to support the statute of limitations argument, and, for the first time, argued that this Court lacked jurisdiction to try Ojedokun because his conduct during the money laundering conspiracy all took place when he lived in Nigeria, thereby precluding the extraterritorial application of the money laundering statute. ECF No. 146 at 7. *See* 18 U.S.C. § 1956(f)(1) ("There is extraterritorial jurisdiction over the conduct prohibited by this section if—(1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and (2) the transaction or series of related transactions involves funds or monetary instruments of a value exceeding $10,000.").[1] The Government filed an opposition to the motion, ECF No. 151, Ojedokun filed a reply, ECF No. 152, and a hearing was set for January 25, 2021. Ojedokun's new counsel then filed a Second Reply to the Government's Response in Opposition, ECF No. 158, an Outline of Arguments for Oral Argument on the motion, ECF No. 159, and an email containing supplemental authorities,

---

[1] Ojedokun does not deny that the transactions involved in the money laundering conspiracy exceeded $10,000.00.

ECF No. 166, which I accepted (and have considered, this time), despite the fact that their filing was in violation of the local rules of this court.[2]

At the hearing on January 25, 2021, I heard argument from counsel, then denied the motion for reasons I stated on the record, ECF No. 163, but advised that I intended to supplement the oral ruling with a memorandum, because the motion raises some difficult issues, and, somewhat surprisingly, there is an absence of authority that gives clear guidance on what the outcome should be. I will begin with the statute of limitations issue raised by the filing of the superseding indictment.

1.   Statute of Limitations Issue.

Ojedokun agrees that if the original indictment (identifying conspiracy to commit wire fraud as the "specified unlawful activity" that the money laundering conspiracy related to) was a legally viable indictment, then the superseding indictment "related back" to the filing of the original indictment, and there is no statute of limitations issue, so long as the superseding indictment did not "broaden or substantially amend" the original charge. *United States v. Snowden,* 770 F.2d 393, 398 (4th Cir. 1985) ("Trivial or innocuous" changes will not bar a superseding indictment from relating back to the date of the original indictment.); *see also Handy v. United States*, No. AW-09-2011, 2010 WL 3086350, at *2 (D. Md. Aug. 6, 2010) ("It is well-established that 'a valid indictment tolls the statute of limitations and that return of a superseding indictment *prior* to the dismissal of the original indictment does not violate the statute of limitations if the superseding indictment does not substantially alter the charge.'") (citations

---

[2]   L.R. 105.2.b prohibits last-minute filing of memoranda—defined as "filed after 4:00 p.m. on the afternoon before the last business day preceding the day on which the proceeding to which the memorandum relates is to be held." L.R. 207 makes this rule applicable to filings in criminal cases. The deadline for submitting memoranda in support of Ojedokun's motion was Thursday, January 21, 2021. The late filed documents were filed on January 23 and 24, 2021.

omitted); *United States v. Brown*, 580 F. Supp. 2d 518, 520 (W.D. Va. 2008) ("As long as a superseding indictment does not broaden or substantially amend the original indictment, the superseding indictment relates back to the filing of the original indictment, even if the superseding indictment is filed outside of the statute of limitations period. . . . In determining whether a superseding indictment broadens the charges in the original indictment, the touchstone is whether the original indictment provided notice of the charges such that the defendant can adequately prepare his or her defense.") (citations omitted), *aff'd on other grounds*, 438 F. App'x 203 (4th Cir. 2011); *United States v. Crysopt Corp.*, 781 F. Supp. 375, 377 (D. Md. 1991) ("[A] superseding indictment brought after the statute of limitations has expired is valid so long as the original indictment is still pending and was timely and the superseding indictment does not broaden or substantially amend the original charges." (citation omitted)).  And, Ojedokun and the Government agree that, but for the statute of limitations issue, the superseding indictment on which Ojedokun was tried and convicted was a legally viable indictment alleging a money laundering conspiracy. This is because wire fraud, 18 U.S.C. § 1343, meets the definition of a "specified unlawful activity" found in 18 U.S.C. § 1956(c)(7)(A), § 1957(f)(3), and § 1961(1) that will support a charge of money laundering or money laundering conspiracy.  Finally, the Government concedes that the offense of conspiracy to commit wire fraud, 18 U.S.C. § 1349, does *not* meet the statutory definition of "specified unlawful activity."  But, Ojedokun and the Government disagree about whether the "specified unlawful activity" referenced in the money laundering statute constitutes an *essential element* of a money laundering conspiracy or money laundering charge, such that it must be pleaded in an indictment charging either offense in order for the indictment to be legally viable.

The foundation of Ojedokun's argument lies in *United States v. Smith*, 44 F.3d 1259 (4th Cir. 1995). At the outset, it is important to acknowledge what the issues in *Smith* did not involve, as much or more so than as what it did involve. It did *not* involve a statute of limitations issue, neither did it involve the filing of a superseding indictment to replace an allegedly deficient original indictment. And, it did not involve the issue of whether conspiracy to commit wire fraud would qualify as "specified unlawful activity" under the money laundering statute. Rather, it involved an appeal of a money laundering conviction, in which the defendant argued that the money laundering charges in the original indictment were legally deficient because they alleged that the laundered funds "'were the proceeds of a wire fraud, in violation of 18 U.S.C. § 1343,' without giving the details of the wire fraud," thereby failing to "allege a necessary element of the offense of money laundering—that the property be '"derived from specified unlawful activity.'" *Smith,* 44 F.3d 1259 at 1263 (citing 18 U.S.C. § 1957(a)). Thus, the *Smith* case addressed whether the indictment, which alleged an underlying offense (wire fraud) that clearly is within the definition of "specified unlawful activity" in the money laundering statute, adequately put the defendant on notice of the charges he was required to defend against.

The *Smith* court began with a tutorial about the basic principles governing what must be contained in a legally sufficient indictment. It said:

> When considering whether an indictment properly charges an offense, we are guided by basic principles that (1) the indictment must contain a statement of "the essential facts constituting the offense charged," (2) it must contain allegations of each element of the offense charged, so that the defendant is given fair notice of the charge that he must defend, and (3) its allegations must be sufficiently distinctive so that an acquittal or conviction on such charges can be pleaded to bar a second prosecution for the same offense.

*Id.* (citations omitted). It added "[t]he allegations of an offense are generally sufficient if stated in the words of the statute itself." *Id*. at 1264.

Although the indictment accurately cited the wire fraud statute and its elements, and despite the fact that it was not disputed that wire fraud is among the long list of offenses included within the statutory definition of "specified unlawful activity" in the money laundering statute, the defendant in *Smith* argued that the factual details alleged in the indictment referenced several classes of victims and multiple theories of guilt, confusing him as to what he had to defend against. *Id*. The focus of his argument was that, the correct statutory reference to "specified unlawful activity" notwithstanding, the *factual allegations* of the indictment failed to provide him with the required notice of the charges against him. But the Fourth Circuit was having none of this, stating: "Smith's contention, we believe, feigns confusion. The core transaction constituting the offense of money laundering is alleged with specificity and detail, and Smith cannot fail to know what transaction forms the basis of the charge." *Id.* Ojedokun's case, in stark contrast, involves the obverse of the issue in *Smith*. Here the challenge is not to the factual sufficiency of the original indictment, but rather the correctness of its statutory citation to the "specified unlawful activity."

Ojedokun seizes on the following language in *Smith* to support his contention that the "specified unlawful activity" in a money laundering or money laundering conspiracy charge constitutes an essential element of the charge, such that a failure correctly to cite a statutorily recognized offense as the specified unlawful activity renders the indictment invalid:

> The money laundering statute requires . . . that the money . . . be derived from "specified unlawful activity." While it is necessary in order to state a money laundering offense to include such an allegation, the requirement is merely a categorical delineation of the type of funds that are subject to a money laundering charge. The core of money laundering, which distinguishes one such offense from another, is the laundering transaction itself. Because the requirement that the funds be illegally derived is not the distinguishing aspect and therefore does not lie at the core of the offense, details about the nature of the unlawful activity underlying the character of the proceeds need not be alleged.
>
> Just because the statute requires that funds be obtained from "specified" unlawful activity does not mean that the government is required to detail the circumstances of the unlawful activity. Rather, the term "specified unlawful

activity" is a defined term referring to a list of offenses which qualify as unlawful activity for purposes of stating a money laundering offense. Section 1957(f)(3) adopts the definition of "specified unlawful activity" given in 18 U.S.C. § 1956(c)(7), which in turn lists five separate categories of offenses that constitute "specified unlawful activity." Wire fraud, penalized under § 1343, is included as a "specified unlawful activity" for purposes of money laundering in 18 U.S.C. § 1956(c)(7)(A). Count 9 of Smith's indictment alleged not only that proceeds were derived from specified unlawful activity, but that the activity violated 18 U.S.C. § 1343, which penalizes wire fraud. Nothing more need be alleged.

*Id*. at 1264–65.

In this regard, Ojedokun and the Government are two parties separated by a common language—they each read the above quote to reach opposite conclusions. Ojedokun reads it to say that the "specified unlawful activity" is a required element of a money laundering charge, without which the indictment is legally deficient. In his view, the reference to "conspiracy to commit wire fraud" (§ 1349) as the "specified unlawful activity" in his original indictment rendered it invalid because § 1956(c)(7)(A), § 1957(d)(3), and § 1961(1) do not include conspiracy to commit wire fraud as a recognized "specified unlawful activity." It follows inexorably, he reasons, that the original indictment was invalid, and the superseding indictment fails to relate back to the original indictment or toll limitations, because there is no tolling if the original indictment is invalid. Def.'s Reconsideration Mot. 3–6 (ECF No. 146).

The Government views this as nonsense. It argues that *Smith* is not a case where the Fourth Circuit squarely addressed the essential elements of a money laundering charge, and concluded that the "specified unlawful activity" was an essential element of the charge that had to be among the statutorily recognized offenses that meet this definition in the money laundering statute, and be correctly alleged in the indictment for the indictment to be valid. Instead, the Government reads *Smith* to hold, narrowly, that a money laundering indictment that correctly alleges an offense recognized as specified unlawful activity in the money laundering statute is *sufficient* to meet the

7

minimum requirements of a valid indictment, but it is not a *sine qua non* for doing so, because it is not an element of a money laundering charge. Gov't Opp. at 2–3 (ECF No. 151). To the Government, if the original indictment in this case incorrectly cited conspiracy to commit wire fraud (§ 1349) instead of wire fraud (§ 1343), it was nothing more than a citation error, about which Fed. R. Crim. P. 7(c)(2) says "[u]nless the defendant was misled and thereby prejudiced, neither an error in a citation nor a citation's omission is a ground to dismiss the indictment or information or to reverse a conviction." Because, it argues, Ojedokun was neither misled or prejudiced by the error, his motion must be denied.

The question of whether the citation to a statutorily recognized "specified unlawful activity" constitutes an essential element of a money laundering or money laundering conspiracy charge is not as easily resolved as might be hoped. It is true, as the Government points out, that in *United States v. Singh*, 518 F.3d 236 (4th Cir. 2008), the Fourth Circuit did squarely address the essential elements of a money laundering conspiracy charge, holding that "[i]n order to prove . . . [a] conspiracy, alleged under 18 U.S.C. § 1956(h), the prosecution was obliged to establish that: (1) an agreement to commit money laundering existed between one or more persons; (2) the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy." (citing *United States v. Allere*, 430 F.3d 681, 693–94 (4th Cir. 2005); *see also United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010) (to prove money laundering conspiracy under § 1956(h) "the Government must prove the following essential elements: (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under §§ 1956(a) or 1957; (2) that the defendant knew that the money laundering proceeds had been derived

from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy.").

And Sand's *Modern Federal Jury Instructions–Criminal*, a well-respected and frequently used reference, further supports the Government's position that the specified unlawful activity referenced in the money laundering statute is not an essential element of the offense. The knowledge instruction reads:

> The fourth element that the government must prove beyond a reasonable doubt is that the defendant knowingly engaged in an unlawful monetary transaction, as defined above.
>
> I instruct you that in a prosecution for an offense under this section, the government is not required to prove that the defendant knew the particular offense from which the criminally derived property was derived. However, the government must prove beyond a reasonable doubt that the defendant knew that the transaction involved criminally derived property, which, I remind you, means any property constituting, or derived from, proceeds obtained from a criminal offense.
>
> If you find that the government has established, beyond a reasonable doubt, that the defendant knew that the transaction involved property derived from a criminal offense, then this element is satisfied.

3 L. Sand, et al., *Modern Federal Jury Instructions—Criminal*, Instruction No. 50A–30 (Matthew Bender).[3]

---

[3] When Ojedokun's jury was instructed, a slightly modified version of this instruction was given. It said:

> The second element of money laundering conspiracy charged in Count One of the Superseding Indictment, and which the government must prove beyond a reasonable doubt, is that the defendant must have known that the proceeds were derived from an illegal activity.
>
> It is not necessary that the defendant knew the particular offense from which the criminally derived property was derived. However, the government must prove beyond a reasonable doubt that the defendant knew that the transaction or transactions that were the subject of the conspiracy involved criminally derived property, which means any property constituting, or derived from, proceeds obtained from a criminal offense.
>
> If you find that the government has established beyond a reasonable doubt that the defendant knew that the transaction(s) involved property derived from a criminal offense, then this element is satisfied for the defendant.

Jury Instruction No. 39, ECF No. 113.

Further, cases from other jurisdictions lend support to the Government's view.  In *United States v. Neuman*, No. 3:11-CR-00247-BR, 2013 WL 5787176 (D. Or. Oct. 28, 2013) the district court addressed the issue of whether conspiracy to commit mail or wire fraud could constitute "specified unlawful activity" under §§ 1956 or 1961.  In denying the defendants motion for arrest of judgment (filed pursuant to Fed. R. Crim. P. 34), the court observed: "Defendants do not cite any controlling authority for their proposition that conspiracy to commit mail or wire fraud cannot constitute "specified unlawful activity" under §§ 1956 or 1961 . . . ." *Id.* at *2.  The court added: "In addition, Defendants overlook the fact that the government is not required to prove a predicate act under § 1956(h)." *Id.* (citing *United States v. Martinelli*, 454 F.3d 1300, 1312 (11th Cir. 2006), which stated: "It is by now abundantly clear that in a money laundering case (or in a money laundering conspiracy case), the defendant need not actually commit the alleged specified unlawful activity.").

Similarly, *United States v. Liersch*, No. 04CR02521, 2005 WL 6414047 (S.D. Cal. May 2, 2005)—a case cited by Ojedokun,[4] more directly addresses the issues in this case. The defendant sought to dismiss the indictment against him, in part based on his assertion that the concealment money laundering charge failed to allege all the essential elements of the statute.  The court rejected this argument, saying:

> Section 1956(a)(1)(B)(i) requires that the money being laundered be "proceeds of specified unlawful activity." Defendant contends that the indictment is insufficient because it fails to allege the elements of the specified unlawful activity from which the funds that were transferred were allegedly derived.  Defendant's suggestion to the contrary notwithstanding, it is clear in the Ninth Circuit that the elements of the specified unlawful activity are not elements of the crime of money laundering.

---

[4]    Def.'s Mot. 5, ECF No. 146.

*Id*. at *7 (citing *United States v. Lomow*, 266 F.3d 1013, 1017 (9th Cir. 2001) ("Because the elements of money laundering do not include the elements of the 'specified unlawful activity,' the district court did not violate Rule 11 by not informing Lomow of the elements of mail fraud."). The *Liersch* court concluded: "Thus, there is no basis for dismissing the indictment for failing to allege the elements of the specified unlawful activity and the motion to dismiss on this ground is denied." *Id*. at *7; *see also United States v. Golb,* 69 F.3d 1417, 1429 (9th Cir. 1995) (holding that the district court was not required to instruct the jury on the elements of the predicate activity for the money laundering charge, because the predicate specified unlawful activity "was not part of the charged money-laundering offense.").

Finally, in his second reply, defense counsel cited *Stirone v. United States*, 361 U.S. 212 (1960) to support the proposition that a change in the specified unlawful activity materially alters an essential element of the offense. There, the Supreme Court held that convicting the defendant of interference with interstate commerce under the Hobbs Act stemming from his interstate movement of steel—when the indictment alleged he interfered only with movements of sand—was not fairly charged in the indictment. *Id*. at 215.

*Stirone* is unpersuasive as it relates to the present issue. There, the trial court allowed evidence about both prior interstate transfer of sand (as alleged) and potential future interstate transfer of steel (which was omitted from the indictment). *Id*. at 214. The trial court went on to instruct the jury that the defendant's guilt could rest on either the sand or the steel allegation. *Id*. But the Supreme Court reversed, finding that the prospective steel allegation amounted to a broadening of the indictment, reasoning "neither this nor any other court can know that the grand jury would have been willing to charge that Stirone's conduct would interfere with interstate exportation of steel." *Id*. at 215–17. Conviction on the steel charge amounted to an amendment

11

of the indictment and added an alternative theory of the defendant's guilt.  *Id*. at 218.  Similar deficiencies are not present here: the original and superseding indictment were returned by the grand jury. Thus, this is not an instance where the charge was effectively amended by the court mid-trial.  Moreover, here the underlying facts remained the same.

So, where does this leave us?  If the specified unlawful activity is not an essential element of a money laundering or money laundering conspiracy charge, and if the Government is not required to prove it at trial, or the judge to instruct the jury on the elements of it when making the jury charge, does the erroneous citation of wire fraud conspiracy as the "specified unlawful activity" in the original indictment against Ojedokun render it legally nugatory, such that the filing of a superseding indictment more than five years after the date of the last activity of the charged money laundering conspiracy is time barred?  And, if Fed. R. Crim. P. 7(c)(2) precludes dismissal of an indictment or reversal of a conviction when a money laundering conspiracy indictment omits a citation to, or erroneously cites, the *charged* offense (as opposed to the specified unlawful activity) in the absence of the defendant being misled or prejudiced, then, *a fortiori,* how can an error in citation of the specified unlawful activity, which is not an element of the charged offense, be a basis for dismissal of the indictment or reversal of a conviction rendered pursuant to it?

Based on the discussion above, I agree with the Government that the Fourth Circuit's decision in *Smith* cannot fairly be read to hold that the "specified unlawful activity" underlying a money laundering charge must be pleaded as an essential element of that charge in order for the indictment to be valid.  Rather, the court was faced with a case where the indictment correctly alleged that the laundered funds "were the proceeds of a wire fraud, in violation of 18 U.S.C. § 1343," but the defendant argued that, viewed collectively, the citation of the money laundering statute (§ 1957) as the charge, the reference to wire fraud as the source of the laundered funds (§

1343), and the factual allegations in the indictment still were insufficient to give him "the details" of the wire fraud.  *Smith*, 44 F.3d at 1263.  After stating the "basic principles" of what an indictment must include ((1) essential facts constituting the charge, (2) allegations of each element of charged offense, to give fair notice to the defendant, and (3) sufficiently distinctive allegations to allow the defendant to plead acquittal or conviction as a bar to a second prosecution for the same offense), the court noted that this usually is accomplished simply by using the words of the statute itself.  *Id*. at 1264.  It then concluded that the word "*specified*," as used in the phrase "specified unlawful activity," was a term of art referring to the type of unlawful activity included in the statutory provisions relating to money laundering.  It did not mean that the indictment was required to set forth in detail the underlying facts supporting the charge against the defendant.  *Id.* at 1265.  The court concluded that because the indictment before it did allege that the proceeds were derived from specified unlawful activity, and that the activity violated § 1343, further factual details were not required.  *Id.*  In short, *Smith* is best read to hold that what was pleaded in the indictment in that particular case was sufficient to allege a money laundering charge.  It did not, as the Fourth Circuit did in *Singh*, 518 F.3d 236, and *Green*, 599 F.3d 360, undertake to set forth the essential elements of a money laundering charge.  And *Singh* and *Green* are consistent with the other cases cited above that held that the specified unlawful activity underlying a money laundering charge is not an essential element of the charge that must be pleaded, defined in the jury charge, and proved at trial.

In this case, the original indictment did plead the elements of a money laundering conspiracy, it did allege they were the proceeds of specified unlawful activity, but it mistakenly alleged that the specified unlawful activity (as that term of art is used in the money laundering statute) was conspiracy to commit wire fraud (§ 1349), instead of wire fraud (§ 1343), and the

Government concedes that that was an error. What must be determined now is the consequence of that error. Did it result in a failure to allege the essential elements of a money laundering conspiracy? *Singh* and *Green* say "no," as many other courts have agreed. If this error was not an omission of an essential element, then it was more akin to "an error in citation or a citation's omission," as referenced in Rule 7(c)(2)—which is not a basis for dismissing the indictment or reversing Ojedokun's conviction, unless he was "misled and thereby prejudiced." Fed. R. Crim. P. 7(c)(2). And that inquiry dovetails nicely with the inquiry that must be made to determine whether the superseding indictment—which "cured" the citation error in the original indictment, relates back to it for purposes of tolling the statute of limitations. Both the "relation back" inquiry, and the "misled and prejudiced" inquiry can be accomplished by comparing the original to the superseding indictment, to determine if the latter was a "trivial or innocuous change" which does not bar relation back, *United States v. Snowden*, 770 F.2d 393, 398 (4th Cir. 1985), or one which materially broadened or substantially amended the original charges, *United States v. Ratcliff*, 245 F.3d 1246, 1253 (11th Cir. 2001), which would prevent relation back, and also suggest that Ojedokun was "misled and thereby prejudiced" for Rule 7(c)(2) purposes.

Both the original indictment and the superseding indictment (ECF Nos. 6, 79) charge Ojedokun with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). In both charging documents, the statement of the conspirators and charged conduct reference Ojedokun, Mukhtar Haruna, and Gbenga Ogundele and, with respect to the latter, his company G.O. Benson Group, and Wells Fargo bank account number ending in 4126, into which proceeds of the underlying criminal conduct were deposited. And, both discuss the source of the laundered funds as various types of internet "romance scams" (with common examples in both, but some additional online dating sites of the same nature identified in the superseded indictment). In

14

addition, both charging documents describe related internet fraud scams that were the source of laundered funds, (including tax return scams, lottery scams, counterfeit check scams, account takeovers, and business email scams).  And, while the superseding indictment added employment scams and unauthorized wire transfers, these additional examples do not amount to a substantial change in the nature of the conspiracy.  The superseding indictment also added that as part of the conspiracy, criminals transmitted images of bank deposits and wire transfer forms as proof that a victim had been tricked into making a wire transfer or bank deposit, Superseding Indictment ¶ 7, but this additional detail did not substantially change the nature of the conspiracy from the original indictment.  Similarly, the superseding indictment added that victim identity information also was used or transferred during the criminal conduct, *id.* ¶ 8, which, again, did not broaden or substantially amend the nature of the charged conduct.  Both charging documents charged that the conspiracy ended in March 2015, but the superseding indictment charged that the conduct began in 2013, instead of January 2011, the commencement date in the original indictment.  *Id.* ¶ 9.  Thus, the superseding indictment narrowed the scope of the conspiratorial conduct, it did not expand it.

Of course, as extensively discussed above, the original indictment identified the specified unlawful conduct as conspiracy to commit wire fraud (§ 1349), while the superseding indictment identified it as wire fraud (§ 1343).  While Ojedokun correctly points out that the elements of proof for conspiracy to commit wire fraud are not identical to the elements of wire fraud, both offenses are forms of criminal conduct made illegal by the Title 18, Chapter 63 ("Mail Fraud and other Fraud Offenses"), so they are similar in essence, and are subject to the same penalties.  § 1349 ("Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.").  And, of course, the original indictment charged conspiracy to

commit *wire fraud* (as opposed to one of the other forms of fraud listed in Chapter 63 of Title 18), so the nature of the fraud itself was the same in both the original and superseding indictments.

When the superseding indictment is compared with the original indictment under the lens of the "basic principles" used to assess whether an indictment properly charges an offense, both: contained the same "essential facts constituting the offense charged"; alleged each element of the *charged* offense (money laundering conspiracy); and the common factual allegations were "sufficiently distinctive so that an acquittal or conviction" on the money laundering conspiracy charged could be pleaded by Ojedokun as a bar to a second indictment for the same offense. *Smith*, 44 F. Supp. 3d at 1263. And, in each, the allegations of the money laundering conspiracy were stated in the words of the money laundering statute itself, which is "generally sufficient." *Id.* at 1264. To the extent that Ojedokun claims that he was misled by the content of the superseding indictment and was confused about the core transactions he was facing, my reaction is the same as the Fourth Circuit's in *Smith*—the confusion is feigned. *Id.*

The Fourth Circuit has recognized that "trivial or innocuous" changes will not bar a superseding indictment from relating back to the date of the original indictment. *United States v. Snowden*, 770 F.2d 393, 398 (4th Cir. 1985) (citations omitted). While a change in the offense charged in the superseding indictment may not be thought of as "trivial or innocuous," the offense charged in the original and superseding indictment was identical—money laundering conspiracy. And, as the Government points out, the original indictment was timely filed, and was still pending when the superseding indictment was brought, and I have concluded that the superseding indictment did not materially broaden or substantially amend the original indictment. Under these circumstances, as the Eleventh Circuit persuasively has found (collecting cases from the First,

16

Second, Third, Fifth, Ninth, and Tenth Circuits holding the same), the touchstone for the relation-back doctrine is whether the Defendant had notice of the charges against him:

> Notice to the defendant is the central policy underlying the statutes of limitation. If the allegations and charges are substantially the same in the old and new indictments, the assumption is that the defendant has been placed on notice of the charges against him. That is, he knows that he will be called to account for certain activities and should prepare a defense.

*United States v. Ratcliff*, 245 F.3d 1246, 1253 (11th Cir. 2001).

As I have pointed out, the charges in the original and superseding indictment are substantially the same. Ojedokun was placed on notice of the charges against him. He knew what he would be called upon to account for, so that he could prepare his defense. For that reason, the superseding indictment relates back to the timely filed original indictment, and Ojedokun's statute of limitations defense is without merit.[5]

Finally, for all the reasons why I have found that the superseding indictment did not materially broaden or substantially amend the original indictment, I also find that the erroneous citation to wire fraud conspiracy as the "specified unlawful activity" of the money laundering conspiracy in the original indictment did not mislead Ojedokun, or prejudice him such that the

---

[5]     During the hearing on January 25, 2021, Ojedokun argued that he was misled and prejudiced by the change in designation of the "specified unlawful activity" in the superseding indictment. He hypothesized that had the case gone to trial on the original indictment, he would have held his cards close to the vest, allowed it to proceed to trial, and if convicted, placed them on the table with a flourish in a motion for a judgment of acquittal, arguing that the erroneous reference to wire fraud conspiracy in the original indictment was fatal because that offense does not meet the statutory definition of "specified unlawful activity" in the money laundering statute. But, for this "defense" to succeed, Ojedokun would have to be correct that the specified unlawful activity was an essential element of the money laundering charge, an argument that I have rejected. For reasons I have explained at length above, the change in the designation of the "specified unlawful activity" did not change an essential element, and so there was no prejudice to him caused by his inability to raise his argument that he could not be convicted of money laundering conspiracy on an indictment alleging that conspiracy to commit wire fraud was the "specified unlawful activity."

original indictment was subject to dismissal or that his conviction should be reversed, for purposes of Fed. R. Crim. P. 7(c)(2).  For all the reasons stated above, I find that the motion to reconsider my earlier denials of Ojedokun's motion for a new trial or acquittal based on his statute of limitations defense must be DENIED.

2. <u>Extraterritoriality, Lack of Subject Matter Jurisdiction, Rule of Lenity, and Void for Vagueness.</u>

In his several filings relating to the pending motion, Ojedokun added some arguments that his retained counsel did not raise in his various pretrial and posttrial motions.  Specifically, he now claims that this court lacks subject matter jurisdiction over Ojedokun (under either of the indictments) because, at all times relevant to the allegations in the charging documents Ojedokun was residing outside the United States (specifically, Nigeria).[6]  He supports this argument by citation to the extraterritorial jurisdiction provision of the money laundering statute, 18 U.S.C. § 1956(f), which states:

> There is extraterritorial jurisdiction over the conduct prohibited by this section if: (1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and (2) the transaction or series of related transactions involved funds or monetary instruments of a value exceeding $10,000.

There is no dispute in this case that Ojedokun was not a United States Citizen during the conduct alleged in the charging documents, and that the money laundering transactions he was charged with exceeded $10,000.00.  Rather, Ojedokun hangs his hat on his contention that none of *his* conduct occurred within the United States.  From this position, he argues that criminal statutes are presumed not to have an extraterritorial effect, and that this presumption cannot be

---

[6]     The Government argues that these arguments were waived by not having been brought earlier.  But since subject matter jurisdiction cannot be waived, I have considered them.

overcome in this case, which deprives this court of jurisdiction over the charges brought against

him.  For good measure, he adds that if I find that there is jurisdiction, I ought to exercise the rule

of lenity to give him the benefit of the doubt (assuming there is any doubt about the existence of

extraterritorial jurisdiction) and, as a belt-and-suspenders argument, that § 1956(f) is void for

vagueness.  Because I find that § 1956(f) is not vague, and that the statutory language clearly rebuts

the presumption against extraterritoriality, and that the conduct of Ojedokun's co-conspirators

most certainly (devastatingly, in fact, to the many victims) occurred within the United States, I

DENY his motion to dismiss for want of jurisdiction, void for vagueness, and for lenity.

Ojedokun is correct that, as a general principle of law, criminal and civil statutes do not

have extraterritorial application.  *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090,

2100 (2016).  Moreover, in *RJR Nabisco*, the Supreme Court set forth an elaborate two-step

framework that ordinarily must be followed for analyzing exterritoriality issues:

> At the first step, we ask whether the presumption against extraterritoriality has been
> rebutted—that is, whether the statute gives a clear, affirmative indication that it
> applies extraterritorially. We must ask this question regardless of whether the statute
> in question regulates conduct, affords relief, or merely confers jurisdiction. If the
> statute is not extraterritorial, then at the second step we determine whether the case
> involves a domestic application of the statute, and we do this by looking to the
> statute's "focus." If the conduct relevant to the statute's focus occurred in the United
> States, then the case involves a permissible domestic application even if other
> conduct occurred abroad; but if the conduct relevant to the focus occurred in a
> foreign country, then the case involves an impermissible extraterritorial application
> regardless of any other conduct that occurred in U.S. territory.

*Id*. at 2101.

Fortunately, however, in this case, it is not necessary to undertake this two-step analysis.

This is because the money laundering statute, § 1956(f), unambiguously states the circumstances

when the money laundering statue does have extraterritorial effect.  As recently noted by the

United States District Court for the Eastern District of New York in *United States v. Hawit*, (a case cited by Ojedokun himself):

> [U]nlike the wire fraud statute, the federal money laundering statute contains a provision specifying the circumstances in which it can be applied extraterritorially, and thus overcomes the presumption against extraterritoriality. 18 U.S.C. § 1956(f); *see RJR Nabisco*, 764 F.3d at 139 ("Applying Morrison's presumption against extraterritoriality to [money laundering and material support] statutes, we conclude that . . . both apply extraterritorially under specified circumstances. . . .").

*United States v. Hawit*, No. 15-cr-252 (PKC), 2017 WL 663542 at *8 (E.D.N.Y. Feb. 17, 2017).

I agree with the analysis in *Hawit,* and similarly conclude that § 1956(f) explicitly overcomes the presumption against extraterritoriality.  And, as the Government correctly pointed out in its opposition memorandum to Ojedokun's pending motion, § 1956(f)(1) applies to him because the conduct of his co-conspirators took place in part in the United States.  Gov't Opp. 4 (The jury found Ojedokun conspired with Ogundele, a Maryland Resident; this is the clearest example of the instant conduct occurring in the United States.); *see also United States v. Firtash*, 392 F. Supp. 3d 872, 900 (N.D. Ill. 2019) (holding district court had jurisdiction over defendants outside of the U.S. due to co-conspirator's substantial actions in the U.S. in furtherance of the conspiracy); *United States v. Hayes*, 99 F. Supp. 3d 409, 422 (S.D.N.Y. 2015) (denying Swiss citizen defendant's motion to dismiss in § 1349 prosecution upon finding Complaint alleged sufficient nexus between defendant and the U.S. where defendant's and conduct occurred abroad); *United States v. Hijazi*, 845 F. Supp. 2d 874, 886 (C.D. Ill. 2011) (citing *United States v. Wormick*, 709 F.2d 454, 461 (7th Cir. 1983) (co-conspirator's "actions in furtherance of the scheme to defraud can thus be attributed to [the defendant], even though he is a foreign national"); *United States v. Manuel*, 371 F. Supp. 2d 404, 409 (S.D.N.Y. 2005) ("The Supreme Court has specifically upheld the exercise of jurisdiction over conspirators who have never entered the United States,

where the conspiracy was 'directed to violation of the United States law within the United States.'"); *cf. United States v. McKeeve*, 131 F.3d 1, 11 (1st Cir. 1997) ("a conspiracy occurring partly within the United States is prosecutable without resort to any theory of extraterritorial jurisdiction"); *United States v. Finch*, Cr. No. 10-333 SOM–KSC, 2010 WL 3938176, at *2 (D. Haw. Sept. 30, 2010) ("if an overt act in furtherance of a conspiracy occurs in this country, then the conspiracy falls within the jurisdiction of the United States").

Because I have no doubt about the application of the unambiguous text of 18 U.S.C. § 1956(f)(1) to this case, there is no basis to apply the rule of lenity to Ojedokun. And, as noted, I do not find that § 1956(f) is ambiguous, therefore it is not void for vagueness.

## Conclusion

For all of the above reasons, Ojedokun's motion for reconsideration and related relief is DENIED.  A separate order follows.


DATED this 4th day of February, 2021.

BY THE COURT:


_____/S/_____
Paul W. Grimm
United States District Judge
