IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SEUN BANJO OJEDOKUN, | * | |
| Petitioner, | * | |
| v. | * | Crim No. DLB-19-228 |
| | | (Related Civ. No. DLB-22-2802) |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

**MEMORANDUM OPINION**

Seun Banjo Ojedokun, who is proceeding without counsel, has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, ECF 195, along with a memorandum of law, ECF 197. The government opposes the motion, ECF 200, and Ojedokun has filed a reply and attached supplement, ECF 201 & 204. Ojedokun also has filed a motion to amend or supplement his § 2255 motion, ECF 202, and several other motions seeking an evidentiary hearing and judicial notice, ECF 203, 208, 210, & 214; *see also* ECF 205 (supp. to ECF 203). No evidentiary hearing is necessary because the § 2255 motion and the record conclusively show that Ojedokun is not entitled to relief. 28 U.S.C. § 2255(b); *see also United States v. Mayhew*, 995 F.3d 171, 176 (4th Cir. 2021). For the following reasons, Ojedokun's § 2255 motion is denied.

I.    **Background**

On May 6, 2019, a grand jury in the District of Maryland indicted Ojedokun on one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). ECF 6. As relevant to this case, § 1956(h) criminalizes conspiring to launder "the proceeds of specified unlawful activity[.]" 18 U.S.C. §§ 1956(a)(1), 1956(h). The indictment identified the "specified unlawful activity" as conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. ECF 6, at 3. The

indictment charged that the conspiracy to commit money laundering occurred between 2011 and 2015. *Id.* at 2.

On August 10, 2020, the grand jury returned a superseding indictment, again charging Ojedokun with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). ECF 79. The superseding indictment differed from the original in two key respects. First, it modified the "specified unlawful activity" to wire fraud, in violation of 18 U.S.C. § 1343, rather than conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. ECF 79, at 3. Second, it charged that the conspiracy occurred between 2013 and 2015, rather than between 2011 and 2015. *Id.* Otherwise, the superseding indictment retained the original indictment's factual allegations "nearly word-for-word[.]" *United States v. Ojedokun*, 16 F.4th 1091, 1112 (4th Cir. 2021).

A jury trial began on September 8 and concluded on September 15, 2020. The evidence presented at trial established that Ojedokun was involved in a "complex international operation designed to obscure the proceeds of a U.S.-based fraud scheme." *Id.* at 1095. The leader of the scheme, a Maryland-based U.S. citizen named Gbenga Benson Ogundele, organized coconspirators to "contact[] elderly victims by way of internet dating websites," where they "would persuade their targets to surrender large sums of money"—often in the "tens or hundreds of thousands of dollars"—by "posing as romantic partners facing financial difficulties[.]" *Id.* Then, once they had procured payment, the coconspirators sought to mask "the source of [the] proceeds by distributing the money among geographically scattered members of the conspiracy." *Id.* at 1096.

Ojedokun participated in the conspiracy from Lagos, Nigeria. *Id.* His role in the conspiracy involved receiving and sending "information concerning the fraud victims' payments, including

electronic documents confirming bank account deposits," to and from his email accounts to other coconspirators. *Id.* The documents Ojedokun received and passed along, such as wire transfers and deposit slips, "would oftentimes be altered to reflect an inflated sum of money." *Id.* The emails Ojedokun sent and received "would pass through a lengthy series of coconspirators, usually without comment in the body of the messages, so as to aid in concealing the origin of the fraud proceeds." *Id.*

At trial, the government introduced ample evidence of Ojedokun's involvement in the conspiracy. It introduced incriminating statements Ojedokun had made during a 2019 interview with FBI agents in his home, in which he confessed to sending and receiving the underlying emails. *Id.* at 1096, 1099. It introduced incriminating emails, bank records, and telephone communications. *Id.* at 1099. It also introduced videotaped depositions of victims of the fraud scheme. *See, e.g.*, ECF 185, at 98, 123; ECF 186, at 47.

The jury returned a guilty verdict on September 15, 2020. Ojedokun filed a motion for a new trial, ECF 128, which the Court denied, ECF 140, as well as a motion for reconsideration, ECF 146, which the Court also denied, ECF 168. Ojedokun was subsequently sentenced to 108 months' imprisonment, followed by three years of supervised release, and ordered to pay $325,100 in restitution as well as a $100 special assessment. ECF 174.

Ojedokun appealed to the United States Court of Appeals for the Fourth Circuit. On appeal, Ojedokun argued that (1) the district court lacked extraterritorial jurisdiction over the § 1956(h) charge, (2) the superseding indictment was barred by the statute of limitations, (3) the FBI agents who arrested him violated the Fourth Amendment, and (4) his trial counsel rendered ineffective assistance. On October 16, 2021, the Fourth Circuit affirmed the judgment, rejecting Ojedokun's first three claims and declining to consider the fourth. *Ojedokun*, 16 F.4th at 1095. Ojedokun filed

a petition for rehearing and rehearing en banc, which the court denied on November 23, 2021. ECF 193. Ojedokun then filed a petition for a writ of certiorari, which the Supreme Court denied on June 6, 2022. *See Ojedokun v. United States*, 142 S. Ct. 2780 (2022).

Ojedokun filed this § 2255 motion on October 24, 2022 and a supporting memorandum of law on November 7, 2022. On October 2, 2024, while his motion was pending, Ojedokun filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2) based on the retroactive application of Amendment 821 to the U.S. Sentencing Guidelines. ECF 211. On October 17, 2024, the Court granted that motion and reduced Ojedokun's term of imprisonment to 97 months. ECF 219.

According to the Bureau of Prisons' inmate locator, as of April 14, 2025, Ojedokun is no longer in BOP custody. On May 30, 2025, Ojedokun informed the Court that he now resides in the St. Clair County Jail in Port Huron, Michigan, where he is detained pending removal proceedings.[1] ECF 220.

## II.      Standard of Review

Section 2255 allows a prisoner in federal custody to move to vacate, set aside, or correct their sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). The Court must hold an evidentiary hearing on such a motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," in which case dismissal is appropriate. *Id.* § 2255(b); *see Mayhew*, 995 F.3d at 176.

---

[1] Ojedokun is no longer in federal prison, but he is still on supervised release, so he remains "in custody" for purposes of his § 2255 motion. *See United States v. Pregent*, 190 F.3d 279, 283 (4th Cir. 1999).

Claims raised on direct appeal may not be relitigated in a § 2255 petition because a petitioner cannot "circumvent a proper ruling . . . on direct appeal by re-raising the same challenge in a § 2255 motion." *United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013) (alteration in *Dyess*) (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)). And, when a claim "could have been but w[as] not pursued on direct appeal," the court will not consider it on a § 2255 motion. *United States v. Mikalajunas*, 186 F.3d 490, 492 (4th Cir. 1999); *see United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351 (2006)). Such procedurally defaulted claims may be considered only "when a habeas applicant can demonstrate cause and prejudice, or actual innocence." *Pettiford*, 612 F.3d at 280. To establish cause, a petitioner "must demonstrate that there was 'some external impediment preventing [his] counsel from constructing or raising the claim.'" *United States v. Draven*, 77 F.4th 307, 315 (4th Cir. 2023) (alteration in *Draven*) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)). To establish prejudice, a petitioner must show the mistake he complains of "worked to his actual and substantial disadvantage." *United States v. McKinney*, 60 F.4th 188, 195 (4th Cir. 2023) (emphasis omitted) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). This means the petitioner must show a substantial likelihood of a different result in the absence of the error. *Frady*, 456 U.S. at 172–74. Claims of ineffective assistance of counsel are an exception to this rule because such claims ordinarily are not litigated on direct appeal. *Massaro v. United States*, 538 U.S. 500, 509 (2003); *see also United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010) (noting ineffective assistance of counsel claims are considered on direct appeal "only where the record conclusively establishes ineffective assistance").

### III.   Discussion

Ojedokun's motion identifies four grounds for relief: (1) that his conviction was obtained in violation of the Fifth and Sixth Amendments, and (2)–(4) that his trial counsel rendered ineffective assistance in various ways. Ojedokun also appears to raise a freestanding claim that he is actually innocent of money laundering conspiracy. The Court will address each claim in turn.

#### A.   Fifth and Sixth Amendment Claim

Ojedokun first claims that his conviction was obtained in violation of the Fifth and Sixth Amendments. Although his argument is somewhat difficult to follow, the essence of Ojedokun's claim appears to be that because the government introduced evidence of wire fraud—the unlawful activity toward which the money laundering conspiracy was directed—at his trial, and because he was ordered to pay restitution and a special assessment, he was effectively convicted of and punished for wire fraud for which he had not been indicted.[2] The Court construes Ojedokun's motion to argue that the superseding indictment was constructively amended in violation of the Fifth Amendment's grand jury clause and that because, in Ojedokun's view, he was really convicted of wire fraud rather than conspiracy to commit money laundering, he was not given fair notice of the charges against him in violation of the Sixth Amendment and the Fifth Amendment's due process guarantees.[3] This claim lacks merit.

"The Fifth Amendment guarantees that '[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.'" *United*

---

[2] Ojedokun could have but did not raise this claim on direct appeal. ECF 195, at 4. However, because the government does not raise procedural default as a defense to this claim, the Court will consider it on the merits.

[3] In his reply in support of his § 2255 motion, Ojedokun asserts several new legal theories. For instance, he claims that the grand jury that indicted him was improperly constituted, ECF 201, at 4, and that the superseding indictment was ambiguous, *id.* at 5. The Court does not consider any

*States v. Banks*, 29 F.4th 168, 173 (4th Cir. 2022) (alteration in *Banks*) (quoting U.S. Const. amend. V). "When the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment, a constructive amendment . . . occurs." *United States v. Allmendinger*, 706 F.3d 330, 339 (4th Cir. 2013) (quoting *United States v. Malloy*, 568 F.3d 166, 178 (4th Cir. 2009)). A constructive amendment to an indictment violates the Fifth Amendment because "[i]t is . . . 'the exclusive province of the grand jury to alter or broaden the charges set out in an indictment.'" *United States v. Camara*, 908 F.3d 41, 45 (4th Cir. 2018) (quoting *United States v. Moore*, 810 F.3d 932, 936 (4th Cir. 2016)).

Moreover, "[d]ue [p]rocess and the Sixth Amendment require" that a criminal defendant be given "notice [of the charges against him] that is sufficient to allow a reasonable defendant to prepare for trial." *Stroud v. Polk*, 466 F.3d 291, 297 (4th Cir. 2006). This notice must "'sufficiently apprise[] the defendant of what he must be prepared to meet' such that he has a meaningful opportunity to defend himself at trial." *Richardson v. Frame*, 165 F.4th 187, 192 (4th Cir. 2026) (quoting *Stroud*, 466 F.3d at 296). "This requirement is satisfied so long as the indictment provides a defendant with 'fair notice of the elements of the offense with which he is charged and sufficient detail so that he can plead an acquittal or a guilty verdict as a bar to a subsequent prosecution for

---

new legal arguments or claims advanced for the first time in Ojedokun's reply. *See Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (explaining that "[t]he ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered" absent certain exceptions not present here). Similarly, the Court does not consider any new claims for relief that Ojedokun raises in his motions for an evidentiary hearing or judicial notice. *See Esposito v. United States*, No. 3:08CV29-V & 3:01CR202-V, 2009 WL 929085, at *6 n.6 (W.D.N.C. Apr. 2, 2009) (explaining that a § 2255 petitioner's "claims are limited to those raised in his [m]otion to [v]acate and those in any timely filed motion to amend"), *appeal dismissed*, 332 F. App'x 32 (4th Cir. 2009).

the same offense.'" *United States v. Janati*, 374 F.3d 263, 271 (4th Cir. 2004) (quoting *United States v. Jackson*, 327 F.3d 273, 290 (4th Cir. 2003)).

Nothing in the record suggests that either the Court or the government constructively amended the superseding indictment. The superseding indictment charged Ojedokun with conspiracy to launder the proceeds of a specified unlawful activity: wire fraud. The Court instructed the jury on that offense. *See* ECF 189, at 52–64. Ojedokun claims that the admission of "prejudicial" evidence—his statements to the FBI, "email evidence," contents of his cell phone, and the video depositions—"broaden[ed] the bases of [his] conviction" and that the Court "amend[ed] the charged offense" by admitting "evidence of other crimes/wrongs that tend to prove offenses of" wire fraud and wire fraud conspiracy. ECF 197, at 9, 11. Ojedokun does not identify the statements, emails, particular deposition testimony, or other evidence to which he is referring with any specificity. But to the extent that Ojedokun is simply claiming that evidence of the fraud scheme somehow altered the offense he was being prosecuted for, it did not. Ojedokun was indicted for a conspiracy to launder the proceeds *of wire fraud*. Evidence of the underlying wire fraud clearly was relevant to this charge. The introduction of this evidence did not transform the charged offense into a charge for which he was not indicted.

Ojedokun argues that he lacked fair notice of the charge against him because, as he sees it, he was prosecuted for wire fraud, which was not a charged offense. ECF 197, at 11–12. He was not. Ojedokun was prosecuted for and convicted of conspiracy to launder the proceeds of wire fraud. The superseding indictment made this abundantly clear and provided Ojedokun with more than sufficient notice of the legal elements and factual allegations against which he would have to defend himself. Though evidence of the fraud scheme that Ojedokun helped conceal was relevant

to this charge, the evidence did not convert the charged money laundering conspiracy offense into a fraud offense.

Ojedokun argues that the restitution order for $325,100, which represented a portion of the amount that victims paid to members of the conspiracy, means he was actually convicted of wire fraud. Not so. The Court may order a defendant to make restitution to the victims of an offense listed in Title 18 of the United States Code, including money laundering conspiracy. *See* 18 U.S.C. § 3663(a)(1)(A). In determining whether to order restitution, the Court "shall consider . . . the amount of the loss sustained by each victim as a result of the offense[.]" 18 U.S.C. § 3663(a)(B)(i)(I). That is precisely what the Court did in this case. And the imposition of a $100 special assessment for Ojedokun's conviction on the money laundering conspiracy was lawful because that offense is a felony "offense against the United States." *See* 18 U.S.C. § 3013(a)(2). Both the restitution order and the special assessment were authorized for Ojedokun's money laundering conviction, and neither suggests he was actually convicted of wire fraud.

Ojedokun's Fifth and Sixth Amendment claim fails.

## B.     Ineffective Assistance Claims

Ojedokun next claims that his trial counsel rendered ineffective assistance by failing to raise a venue challenge; failing to file a motion to suppress Ojedokun's incriminating statements to the FBI on the ground that the FBI agents entered Ojedokun's home in violation of the Fourth Amendment; and failing to move for the suppression or exclusion of Ojedokun's emails on certain grounds.

"[T]o help ensure our adversarial system produces just results," the Sixth Amendment to the Constitution guarantees a criminal defendant the effective assistance of counsel. *United States v. Carthorne*, 878 F.3d 458, 465 (4th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668,

9

685 (1984)); *see also Buck v. Davis*, 580 U.S. 100, 118 (2017). To prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy the familiar two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See United States v. Freeman*, 24 F.4th 320, 326 (4th Cir. 2022) (en banc). That test requires the petitioner to show that (1) his counsel's performance was deficient and (2) he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *Freeman*, 24 F.4th at 326. Ultimately, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

To satisfy the deficient performance prong, a petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Id.* at 688. Performance is evaluated based on "'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Strickland*, 466 U.S. at 690); *see Carthorne*, 878 F.3d at 465. The "first prong sets a high bar." *Buck*, 580 U.S. at 118. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland*, 466 U.S. at 689. "[J]udicial scrutiny of counsel's performance must be highly deferential." *Carthorne*, 878 F.3d at 465 (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)). It generally is sufficient for Sixth Amendment purposes "when counsel provides reasonably effective assistance, including demonstrating legal competence, doing relevant research, and raising important issues." *Id.* "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 691. Conversely, counsel's "ignorance of a point of law that is fundamental to his case combined with his failure to

perform basic research on that point is a quintessential example of unreasonable performance[.]" *Hinton v. Alabama*, 571 U.S. 263, 274 (2014).

To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A petitioner cannot show prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

In evaluating whether the petitioner has satisfied the two-pronged test set forth in *Strickland*, a court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Nor must a court address both components if one is dispositive. *Jones v. Clarke*, 783 F.3d 987, 991–92 (4th Cir. 2015) (citing *Strickland*, 466 U.S. at 697). Because failing either prong is fatal to a petitioner's claim, "there is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

### 1.    Venue Claim

Ojedokun claims that venue for his prosecution was improper in the District of Maryland because he resided in Nigeria and never traveled to the United States during the conspiracy. He argues that his trial counsel rendered ineffective assistance by failing either to seek dismissal of the indictment or to move for a judgment of acquittal on that basis. This claim is meritless.

Under Article III of the Constitution and the Sixth Amendment, a defendant must be tried in the state and district where his crime was committed. *See United States v. Spivey*, 956 F.3d 212,

215 (4th Cir. 2020). In the context of a money laundering conspiracy charge, Congress has provided that venue may lie either in the "district where venue would lie for the completed offense . . . or in any other district where an act in furtherance of the . . . conspiracy took place." *United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010) (quoting 18 U.S.C. § 1956(i)(2)).

When a defendant files a pretrial motion to dismiss for improper venue, the Court must limit itself to assessing whether the allegations in the indictment, if true, would establish venue. *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012). A defendant also may raise a venue challenge at the close of evidence "if an indictment properly alleges venue, but the proof at trial fails to support the venue allegation[.]" *United States v. Collins*, 372 F.3d 629, 633 (4th Cir. 2004). When challenging venue through a motion for judgment of acquittal, "the defendant must show that no reasonable juror could conclude by a preponderance of the evidence that venue exists." *United States v. Gaughan*, 431 F. Supp. 3d 686, 689 (D. Md. 2020) (quoting *United States v. Jaensch*, 678 F. Supp. 2d 421, 431 (E.D. Va. 2010), *aff'd*, 665 F.3d 83 (4th Cir. 2011)).

Even if Ojedokun could show his counsel was deficient for failing to move to dismiss for lack of venue, he cannot show prejudice. The original and superseding indictments alleged that Ojedokun participated in a money laundering conspiracy "in the District of Maryland and elsewhere[.]" ECF 6, at 2; ECF 79, at 3. The indictments further alleged that Ogundele, a coconspirator, took an act in furtherance of the conspiracy by opening a "Drop Account" to receive money from victims of the fraud scheme and that at times relevant to the indictments, Ogundele was a resident of Laurel, Maryland. ECF 6, at 1–2; ECF 79, at 1–2. These allegations, taken as true, sufficed to show that venue was proper in the District of Maryland. *See, e.g.*, *United States v. Powers*, 40 F.4th 129, 136 (4th Cir. 2022) ("Our inquiry when assessing a challenge to the adequacy of the indictment is whether the Government has alleged that a crime was committed in

12

the district, not whether or how the Government will prove that fact at trial."); *United States v. Hardaway*, 999 F.3d 1127, 1130 (8th Cir. 2021) (allegations that defendant and coconspirator "'did knowingly combine, conspire, and agree with each other' to commit money laundering in 'the Eastern District of Missouri, the Central District of California, and elsewhere'" were sufficient to support venue for money laundering conspiracy charge in the Eastern District of Missouri). Thus, a pretrial motion to dismiss for improper venue would have been unsuccessful.

Nor would trial counsel have had better luck had he raised a venue challenge at the close of evidence. As the Fourth Circuit explained in Ojedokun's direct appeal, the evidence at trial showed that Ojedokun entered into an agreement with (among others) Ogundele, a Maryland resident, to conceal the proceeds of the fraud scheme, *see Ojedokun*, 16 F.4th at 1108, that Ogundele "coordinat[ed]" the fraud scheme, and that Ogundele received deposit slips and other wire transfer documents concerning the victims' payments in Maryland, *id.* at 1096. In light of this evidence, a reasonable juror could have concluded by a preponderance of the evidence that an act in furtherance of the money laundering conspiracy took place in Maryland and that venue therefore was proper in the District of Maryland. Had Ojedokun's trial counsel filed a motion for judgment of acquittal on the basis of improper venue, his motion would have been unsuccessful.

This ineffective assistance claim fails.

### 2.      Fourth Amendment Claim

Next, Ojedokun argues that his trial counsel rendered ineffective assistance because he failed to file a motion to suppress on the grounds that the FBI entered Ojedokun's home in violation of the Fourth Amendment.[4] This claim lacks merit.

---

[4] Although Ojedokun also raised substantially the same ineffective assistance claim on direct appeal, the Court will nonetheless consider it because the Fourth Circuit declined to rule on it.

Some additional context for this claim is appropriate. Although the government alleged that Ojedokun participated in the conspiracy from Lagos, Nigeria until 2015, Ojedokun was not arrested until April 2019. *Id.* At the time of his arrest, Ojedokun was living in Chicago; he had come to the United States two years prior to pursue a graduate degree in chemistry at the Illinois Institute of Technology. *Id.* On the morning of April 25, 2019, two FBI agents came to Ojedokun's home in Chicago and knocked at the door. *Id.* They had a warrant for Ojedokun's arrest, ECF 62, at 7 n.4, but did not inform Ojedokun of this warrant when they sought to enter his home or before the conclusion of the interview, *see generally* ECF 15-3, at 331–93, in *United States v. Ojedokun*, No. 21-4127 (4th Cir. June 1, 2021) (interview transcript). "When Ojedokun emerged from the home, the agents identified themselves by name, displayed their FBI credentials, and asked Ojedokun if he would be willing to speak with them." *Ojedokun*, 16 F.4th at 1096. They "asked Ojedokun if he 'ha[d] a moment' to answer 'a few questions . . . a couple questions about some people you may have known, uh, back in Nigeria.'" *Id.* (alteration in *Ojedokun*). Ojedokun responded, "Okay." *Id.* "One agent then asked, 'Can we talk? . . . Inside? Or . . . ,' to which Ojedokun replied, 'Oh, either way.'" *Id.* Then, "[t]he agent asked, 'Okay, can we go in?' and Ojedokun again replied, 'Okay.'" *Id.* Once the agents had entered the home, they interviewed Ojedokun, and Ojedokun made incriminating statements. *Id.* During the course of the interview, Ojedokun also consented to a search of his cell phone's contact information. *Id.* At the end of the interview, the agents arrested Ojedokun and seized his cell phone. *Id.*

Ojedokun contends that he did not give valid consent for the FBI agents to enter his home and that they exceeded the scope of his consent by asking him about more than just the people he knew in Nigeria. He also contends, without support, that the arrest warrant was "void ab initio" and that even if it was valid, it did not authorize the FBI agents to enter his home for more than a

brief period to effectuate his arrest. ECF 197, at 20. He claims that his trial counsel should have filed a pretrial motion to suppress his statements to the FBI and the contents of his cell phone on these bases and that the failure to do so amounted to ineffective assistance of counsel.

Ojedokun's claim is foreclosed by the Fourth Circuit's analysis in his direct appeal. On appeal, Ojedokun likewise argued that the evidence resulting from his FBI interview should have been suppressed because his consent to enter his home was involuntary and/or because the FBI exceeded the scope of that consent. (Ojedokun also argued that trial counsel was ineffective for failing to file a motion to suppress on that basis, but the Fourth Circuit declined to rule on that claim.) The Fourth Circuit—reviewing the Fourth Amendment claim for plain error—disagreed. It reasoned that Ojedokun's consent was voluntarily given because Ojedokun assented when the agents asked to come into his home, Ojedokun "was sufficiently intelligent to understand their requests," and "[t]he record [did] not reveal that the agents made any misrepresentations, operated under false pretenses, or otherwise obtained Ojedokun's consent to go inside the home under duress or coercion." *Ojedokun*, 16 F.4th at 1114 (internal quotation marks omitted). The court also was unpersuaded by Ojedokun's claim that the agents exceeded the scope of his consent because he agreed only to let them into "ask 'a few' questions." *Id.* The court explained that "Ojedokun, like any reasonable person under the circumstances presented, surely understood that the officers did not want to come into his home and sit down to ask 'two or three' questions." *Id.*

For the reasons stated by the Fourth Circuit, Ojedokun voluntarily allowed the FBI into his home, and the FBI did not exceed the scope of his consent. Under these circumstances, any deficiencies in the arrest warrant would not have impacted the voluntariness of Ojedokun's statements or his consent to the search of his cell phone. Ojedokun's consent meant that the FBI did not need a warrant *at all* to come into his home and interrogate him there or to search his

phone. His statements and the evidence found in his cell phone were not the fruit of an illegal entry or arrest warrant. Had trial counsel raised these arguments in a motion to suppress, they would have been rejected. Ojedokun was not prejudiced by his counsel's failure to do so.

This ineffective assistance claim also fails.

### 3. Email Claim

Ojedokun next argues that trial counsel rendered ineffective assistance by failing to move to suppress or exclude his emails on certain bases. This claim also fails.

In 2014, several years before his arrest, Ojedokun's email account (as well as the email accounts of his coconspirators) was the target of a search warrant issued by Magistrate Judge Charles Day. Prior to trial, Ojedokun's trial counsel moved to suppress the fruits of this search on the basis that the warrant was issued without probable cause. ECF 54. The Court denied that motion (along with two other motions to suppress) on August 18, 2020. ECF 85. Ojedokun now argues that trial counsel should have challenged the warrant on the basis that it was issued in violation of Rule 41(b) of the Federal Rules of Criminal Procedure, which governs venue for warrant applications.

Even if this were a basis for invalidating the search warrant, Ojedokun's argument runs headlong into the good faith exception to the Fourth Amendment exclusionary rule. "In *United States v. Leon*, [468 U.S. 897 (1984),] 'the Supreme Court recognized a good faith exception to [the Fourth Amendment exclusionary rule], under which evidence obtained by an officer who acts in objectively reasonable reliance on a search warrant will not be suppressed, even if the warrant is later deemed invalid.'" *United States v. Ray*, 141 F.4th 129, 134 (4th Cir. 2025) (second alteration in *Ray*) (quoting *United States v. Thomas*, 908 F.3d 68, 72 (4th Cir. 2018)). There are only five circumstances in which the good faith exception does not apply:

(1) where a magistrate issues a warrant based on a deliberately or recklessly false affidavit; (2) where a magistrate lacks neutrality and detachment; (3) where a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; (4) where a warrant is so facially deficient that a reasonable officer could not believe it was valid; and (5) where police recklessly maintain or knowingly enter false information into a warrant database to enable a future arrest.

*Id.* at 134–35.

Ojedokun argues that the good faith exception did not apply because "(1) the affidavit in support of the search warrant did not particularize the items to be seized; [and] (2) the judicial review of the reasonableness of the search was conducted after the search had been conducted." ECF 197, at 27. As for the first argument, the failure to sufficiently particularize items to be seized is not grounds for setting aside the good faith exception. *See Ray*, 141 F.4th at 134–35. As for the second argument, Ojedokun appears to argue that the government introduced emails from late 2014 through mid-2015, which postdated the execution of the search warrant authorized by Magistrate Judge Day in August 2014. But Magistrate Judge Gina Simms authorized two additional search warrants for Ojedokun's email accounts in 2020. Thus, there is no truth to Ojedokun's claim that a judicial officer reviewed the reasonableness of a search of his email accounts after the search occurred.[5] Had trial counsel moved to suppress on the grounds Ojedokun now advances, there is no reasonable likelihood that the motion would have

---

[5] Although Ojedokun states, somewhat confusingly, that "the government cannot still clearly explain why evidence dated September 10, 2014 and beyond were obtained using the acclaimed 'June 2020' 'search warrant,'" he does not actually claim that any of the email evidence he complains about was not obtained pursuant to a search warrant. ECF 197, at 29.

17

been successful. Ojedokun was not prejudiced by his trial counsel's failure to raise these arguments in a motion to suppress.

Ojedokun also argues that the introduction of the emails into evidence violated Federal Rules of Evidence 402, 403, and 404(b) and that trial counsel should have moved to exclude them on that basis. In conclusory fashion, and without discussing any specific email or the other evidence in any detail, Ojedokun claims that his emails were irrelevant and overly prejudicial and that the government introduced them simply to show that he had a "criminal disposition." ECF 197, at 30. He further argues, with no analysis, that the emails were inadmissible under the Federal Rules of Evidence because they were obtained in violation of the Fourth Amendment. Such threadbare arguments fall well short of meeting Ojedokun's burden to show that counsel was deficient in failing to move to exclude the emails under Rules 402, 403, and 404(b) and that he was prejudiced by counsel's failure to move to exclude them.

This claim of ineffective assistance also fails.

## C.    Actual Innocence Claim

Finally, Ojedokun claims that he is actually innocent of the § 1956(h) offense.[6] He claims that he "never conspired . . . to commit an offense of money laundering," that he "never caused anyone to conduct [a] financial transaction of illegally obtained money," and that the government

---

[6] It is unclear whether Ojedokun raises his claim of actual innocence as a freestanding claim or simply as a gateway to overcome his procedural default of the Fifth and Sixth Amendment claim. Out of an abundance of caution, and in light of Ojedokun's pro se status, the Court will consider this as a freestanding innocence claim.

failed to introduce sufficient evidence to sustain his conviction. ECF 197, at 6–8. This claim lacks merit.

The Supreme Court has never recognized a freestanding actual innocence claim as a basis for federal habeas relief. *See In re Stewart*, 78 F.4th 690, 700 n.9 (4th Cir. 2023) (collecting cases). The Fourth Circuit has held that, even assuming a freestanding innocence claim is cognizable, to prevail on such a claim the petitioner must satisfy the requirements of 28 U.S.C. § 2255(h)(1); that is, the petitioner must identify "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found" the petitioner guilty. *United States v. MacDonald*, 911 F.3d 723, 786, 798 (4th Cir. 2018) (quoting 28 U.S.C. § 2255(h)(1)).

Ojedokun does not identify any newly discovered evidence of his innocence at all, let alone evidence so persuasive that no reasonable juror could find him guilty. He simply contends that the government's evidence against him was insufficient. That dooms his claim of actual innocence.[7]

### D.    Motion to Amend or Supplement § 2255 Motion

Ojedokun has filed a motion to amend or supplement his § 2255 motion in which he states that he wishes to bring additional claims for relief. The Court assesses this motion under the Rule 15 standard. *See, e.g.*, *Smith v. United States*, Civ. No. MJM-18-3374 & Crim. No. MJM-14-85, 2024 WL 1346868, at *6 (D. Md. Mar. 29, 2024). Pursuant to Rule 15, courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *ACA Fin. Guar.*

---

[7] Ojedokun also argues that he is actually innocent of wire fraud. Since Ojedokun was not convicted of wire fraud, the Court need not address this argument.

*Corp. v. City of Buena Vista*, 917 F.3d 206, 217–18 (4th Cir. 2019) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

Ojedokun's single-page motion for leave to amend does not describe in any detail the claims he wishes to add. Because Ojedokun has not submitted sufficient information to enable the Court to determine whether he should be granted leave to amend, his motion is denied.[8]

## IV.    Certificate of Appealability

The accompanying Order is a final order adverse to Ojedokun. Thus, the Court must issue or deny a certificate of appealability. Rule 11(a), *Rules Governing Section 2255 Cases in the U.S. Dist. Cts.* Ojedokun must receive a certificate of appealability before an appeal may proceed. 28 U.S.C. § 2253(c)(1).

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects a § 2255 petition on the merits, as here, a petitioner may satisfy this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Ojedokun

---

[8] Ojedokun has filed motions seeking an evidentiary hearing. The § 2255 motion and the record conclusively show that Ojedokun is not entitled to relief, so his requests for an evidentiary hearing are denied. Ojedokun also has filed what he characterizes as "requests for judicial notice" (sometimes in combination with his requests for an evidentiary hearing) in which he asks the Court variously to "take notice of the file and records in this Court," *see, e.g.*, ECF 210, at 1, and to draw certain legal conclusions in his favor, *see, e.g.*, ECF 208, at 4 (asking the Court to take "judicial notice" that "trial counsel was ineffective for failing to move for Fed. R. Crim. P. . . . 12(b)(3)(B)(v) dismissal of the indictment for failure to charge an offense of money laundering which the superseding indictment charged"). To the extent Ojedokun is simply asking the Court to consider the record of his criminal case in ruling on his § 2255 motion, his request is unnecessary because the Court has done so. To the extent Ojedokun asks the Court to draw legal conclusions, the Court does not consider any legal claims or arguments beyond the four corners of Ojedokun's § 2255 motion, for the reasons discussed in footnote 3 of this opinion. Ojedokun's requests for judicial notice are denied.

has failed to demonstrate that a certificate of appealability should issue. He still may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b).

## V.    Conclusion

Ojedokun's § 2255 motion is denied. His motion for leave to amend or supplement his § 2255 motion is denied. Because the motion and the record conclusively show that Ojedokun is not entitled to relief, his requests for an evidentiary hearing are denied. His requests for judicial notice are denied. A separate Order follows.

Date: March 17, 2026

Deborah L. Boardman
United States District Judge